WILLIAM B. STOKES, PLAINTIFF IN ERROR, vs. FRANCIS W. SAL-
TONSTALL, DEFENDANT IN ERROR.

In an action against the owner of a stage coach used for carrying passengers, for an injury
sustained by one of the passengers by the upsetting of the coach, the owner is not liable,
unless the injury of which the plaintiff complains was occasioned by the negligence or
want of proper skill or care in the driver of the carriage, in which he and his wife were
passengers: and the facts that the carriage was upset, and the plaintiff's wife injured, are
prima facie evidence that there was carelessness, or negligence, or want of skill on the
part of the driver; and throws upon the defendant the burden of proving that the acci-
dent was not occasioned by the driver's fault.

It being admitted that the carriage was upset and the plaintiff's wife injured, it is incum-
bent on the defendant to prove that the driver was a person of competent skill, of good
habits, and in every respect qualified, and suitably prepared for the business in which he
was engaged; and that he acted on this occasion with reasonable skill, and with the utmost
prudence and caution: and if the disaster in question was occasioned by the least negli-
gence, or want of skill, or prudence on his part, then the defendant is liable in the ac-
tion.

If there was no want of proper skill, or care, or caution on the part of the driver of a stage
coach, and the stage was upset by the act of the plaintiff or his wife, in rashly and impro-
perly springing from it, then the defendant is not liable to an action: but if the want of
proper skill or care of the driver placed the passengers in a state of peril, and they had at
that time a reasonable ground for supposing that the stage would upset, or that the driver
was incapable of managing his horses, the plaintiff is entitled to recover; although the
jury may believe from the position in which the stage was placed by the negligence of
the driver, the attempt of the plaintiff or his wife to escape may have increased the peril,
or even caused the stage to upset; and although they may also find that the plaintiff and
his wife would probably have sustained little or no injury if they had remained in the
stage.

If the driver was a person of competent skill, and in every respect qualified and suitably
prepared for the business in which he was engaged, and the accident was occasioned by
no fault or want of skill or care on his part, or that of the defendant or his agents, but
by physical disability arising from extreme and unusual cold, which rendered him inca-
pable for the time to do his duty; then the owner of the stage is not liable in an action for
damages, for an injury sustained by a person who was a passenger.

IN error to the Circuit Court of the United States for the district
of Maryland.

The defendant in error, Francis W. Saltonstall, in September, 1836,
instituted an action for the recovery of damages against Richard C.
Stockton and William B. Stokes, owners of a line of stages for car-
rying passengers from Baltimore to Wheeling; Mr. Saltonstall and
his wife having on the 6th day of December, 1836, been passengers
in the stage, when, by the carelessness, unskilfulness, and de-
fault of the driver, the stage was upset; by reason of which Mrs.
Saltonstall had her hip fractured, and several other bones of her
body broken, and was otherwise greatly cut, bruised, and injured, so
that her life was endangered.

By an agreement between the counsel for the plaintiff and the de-
fendant's no objection was to be taken to the nonjoinder of other
persons as defendants, who were also owners or interested in the
line of stages, when the injury complained of in the action occurred;
and the plaintiff might recover in this action any damages which

VOL. XIII.—Q

might be recovered in an action by himself and wife, or by himself alone.

Richard C. Stockton having died after the institution of the suit, it was proceeded in against William B. Stokes, who survived him.

The cause was tried before a jury, and a verdict was given for the plaintiff, under the instructions of the Court, for seven thousand dollars. On this verdict the Court gave a judgment for the plaintiff.

The counsel for the defendant tendered a bill of exceptions to the opinion of the Court; and he afterwards prosecuted this writ of error.

The bill of exceptions stated, at large, the evidence given on the trial of the cause.

The evidence of the witnesses for the plaintiff, taken under a commission to New Orleans, and examined on the trial, stated, that at the last change of horses, before the accident, the passengers generally remarked that the driver seemed to have drank too much to go on. Mr. Saltonstall, the plaintiff, went to the agent, or the person avowing himself as such, and who was acting in that capacity, and reported to him the observation made by the passengers; the agent replied that the driver was all straight, and that the appearance of his being intoxicated was entirely owing to his having driven during the night previous, which had been excessively cold. When the stage arrived at about two miles from Bevansville, the passengers felt the stage strike against a mound or ridge on the right side of the road. Mr. Saltonstall on observing this, immediately jumped out, as was believed, with the intention of stopping the horses; Mrs. Saltonstall attempted to follow her husband, but fell to the ground at the very instant the stage upset, and it fell directly on her. The upset took place on Sunday afternoon, the 5th day of December, at about four o'clock in the afternoon. It was broad daylight. The plaintiff's wife was dreadfully injured; she was taken up and carried to a log-house in the neighbourhood. The injury was occasioned by the falling of the stage on her body.

A witness stated that the road was perfectly level, and in good travelling order. There had been ice, but it had been so beaten down that there was only a little remaining on the sides of the road. The centre was free from it. The road was not considered dangerous or difficult. The driver was believed to be intoxicated, and his intoxication was increased by his drinking with a man on the seat along side of him. This belief was produced by his reckless and irregular manner of driving, which called for repeated remonstrances from the passengers, and which were wholly unattended to; and for his apparent stupid and drunken manner of conduct after the upset. He was totally unfit for any thing; he could not, or would not answer a question, nor afford the least possible assistance.

The injuries sustained by Mrs. Salstonstall were proved by the surgeons and medical attendants, and they were such as to make it impossible, or too dangerous to attempt to move her from the log hut, from the time of the accident, the sixth day of December, until

the eighteenth day of December, when she was carried to Bevans-ville, where she remained until the eighteenth day of May following. In July of the same year, she was in Philadelphia, still in a state of great suffering, and using crutches.

The plaintiff also, proved, by Mr. Ludlow, who was a passenger in a stage which arrived after the accident, that the road was perfectly good, and was one on which a stage would not be likely to upset. The witness went to the driver, and had some conversation with him. The defendant's counsel objected to the statements of the driver being admitted in evidence; but the Court declared them to be admissible; to which the counsel for the defendant excepted. The plaintiff then further proved by Mr. Ludlow, that he asked the driver how the accident happened, when he stated he had upset fifty coaches, and he did not believe the woman was as much hurt as she said she was.

The testimony offered by the defendant, was intended to show the capacity and sobriety of the driver, and that the road was icy, difficult, and dangerous; and that the upsetting of the stage might be accounted for by the slippery and icy condition of the road. The evidence for the defendants, it was contended, proved that had the wife of the plaintiff remained in the stage, no injury would have resulted to her. The other passengers were not materially bruised. The defendant also proved, that the coach and harness were properly made, and of sufficient strength; and that the horses were good and steady.

The defendant's counsel prayed the Court to instruct the jury in sixteen different prayers. Among those were the following:

1. If the jury shall believe from the evidence in the cause, that the injury to the plaintiff's wife was occasioned solely by the overturning of the coach, and by its falling upon her; and that such overturning was occasioned by the act of the plaintiff and his wife, or either of them, in leaping from, or otherwise in leaving the said coach; and shall further believe, from the evidence in the cause, that at the time of such leaping from, or of such leaving said coach, there did not exist any certain peril, nor any immediate danger of personal injury, nor any reasonable cause of apprehension of impending danger by remaining in the coach; then the plaintiff is not entitled to recover upon the issue joined in this case, in respect to the said injury sustained by his wife; even if they also believe from the evidence in the cause, that the driver was guilty of carelessness, negligence, and misconduct, in placing the coach in the particular place and situation in which it was at the time of such leaping from, or leaving the coach.

2. If the jury shall believe from the evidence in the cause, that the injury to the plaintiff's wife was occasioned solely by the overturning of the coach, and its falling upon her; and that such overturning was occasioned by the act of the plaintiff and his wife, or either of them, in leaping from, or otherwise in leaving the coach,

and shall further believe from the evidence in the cause, that such leaping from, or such leaving the coach, was not under the actual circumstances an act of prudent precaution for the purpose of self-preservation; nor such an act as a person of ordinary care, prudence, or resolution would have adopted, under the actual circumstances, even if they shall believe from the evidence, that such leaping from, or such leaving said coach, was under the existence and incitement of actual alarm and apprehension of supposed impending danger; then the plaintiff is not entitled to recover upon the issue joined in this cause, in respect of said injury sustained by his said wife.

3. If the jury shall believe from the evidence in the cause, that the injury sustained by the plaintiff's wife was occasioned solely by the overturning of the coach, and by its falling upon her; and that such overturning was occasioned by the act of the plaintiff and his said wife, or by the act of either of them, in leaping from, or otherwise in leaving said coach; and shall further believe, from the evidence in the cause, that such leaping from, or leaving of said coach was not effected with proper caution and prudence, under the actual circumstances, as well in reference to the situation in which the said plaintiff and his wife, (if the overturning was occasioned by the act of both,) were placed; or, if such overturning was occasioned only by the act of one, in reference to the situation of such one of them, by whom such overturning was occasioned, was placed; as also in reference to the situation in which said coach was placed in position, with respect to the ground on which it stood, and otherwise, then the plaintiff is not entitled to recover, in respect to said injury to his said wife.

4. If the jury shall believe from the evidence in the cause, that the injury to the plaintiff's wife was occasioned solely by the falling of the coach upon her, and that she was then outside of the coach and on the ground; and shall further believe, that at the time she leapt from, or left the coach, she knew, or believed, that it was overturning, or about to overturn, and leapt from, or left it for that cause, and that she designedly alighted on the ground in the direction in which the coach was overturning, or about to overturn; that then, such her act was a rash and imprudent act, and the defendant is not responsible upon the issue joined in this cause for the injury which she so sustained; even if the jury shall, at the same time, believe that such overturning was occasioned by the fault or negligence of the driver.

5. If the jury shall find, from the evidence, that the plaintiff's wife, if she had remained in the coach, would not have been materially injured by the overturning of the same; and shall find from all the evidence in the cause, that a discreet and prudent person, under the circumstances in which she was placed, as disclosed in evidence, would have, and ought to have, remained in the coach; and that she placed herself imprudently, and indiscreetly, and rashly

in the way of incurring the actual injury which she sustained, that then the defendant is not liable, upon the issue joined in this case, to answer in damages for such injury.

6. If the jury shall believe from the evidence in the cause, that the plaintiff and his wife, or either of them, by leaping from the coach, or leaving the same, contributed in fact, to produce the happening of the injury to the plaintiff's wife, which she actually sustained; and shall further believe, that in so leaping from, or leaving the said coach, the same was done unnecessarily and indiscreetly, or imprudently, or rashly, incautiously, or without ordinary care, that then the plaintiff is not entitled to recover in respect of said injury : even if the jury shall believe that the driver was guilty of gross negligence and misconduct; and was partly, or even mainly, the cause of the happening of such injury.

16. That the prima facie evidence of negligence arising from the fact of the upsetting of the coach, and the injury to the plaintiff's wife, is rebutted by the proof of the fact, if the jury so believe from the evidence, that the defendants had a first-rate coach, a competent set of horses, and good and proper harness, and a competent, prudent, and careful driver at the time of the accident; and that then the burden of proving negligence is thrown upon the plaintiff.

The plaintiff also offered prayers to the Court for instructions to the jury.

All the prayers offered by the defendant and the plaintiff were rejected by the Court, and the Court instructed the jury :

1. That the defendant is not liable in this action unless the jury find that the injury of which the plaintiff complains was occasioned by the negligence or want of proper skill or care in the driver of the carriage, in which he and his wife were passengers: and the facts that the carriage was upset, and the plaintiff's wife injured, are prima facie evidence that there was carelessness, or negligence, or want of skill, on the part of the driver; and throws upon the defendant the burden of proving that the accident was not occasioned by the driver's fault.

2. It being admitted that the carriage was upset and the plaintiff's wife injured, it was incumbent on the defendant to prove that the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged : and that he acted on this occasion with reasonable skill, and with the utmost prudence and caution; and if the disaster in question was occasioned by the least negligence, or want of skill, or prudence on his part, then the defendant is liable in this action.

3. If the jury find there was no want of proper skill, or care, or caution on the part of the driver, and that the stage was upset by the act of the plaintiff or his wife, in rashly and improperly springing from it, then the defendant is not liable to this action; but if the want of proper skill or care of the driver placed the passengers in a state of peril, and they had at that time a reasonable ground for

supposing that the stage would upset, or that the driver was incapable of managing his horses, the plaintiff is entitled to recover; although the jury may believe, from the position in which the stage was placed by the negligence of the driver, the attempt of the plaintiff or his wife to escape may have increased the peril, or even caused the stage to upset; and although they may also find that the plaintiff and his wife would probably have sustained little or no injury if they had remained in the stage.

4. If the jury shall find that the driver was a person of competent skill, and in every respect qualified and suitably prepared for the business in which he was engaged, and that the accident was occasioned by no fault, or want of skill or care on his part, or that of the defendant or his agents, but by physical disability, arising from extreme and unusual cold, which rendered him incapable for the time to do his duty; then the defendant is not liable in this action.

The defendant excepted to the refusal of the prayers offered by him, and to the instructions given by the Court to the Jury.

The case was submitted to the Court, in printed and written arguments, by Mr. Schley, for the plaintiff in error; and by Mr. Johnson, for the defendant.

Mr. Schley, for the plaintiff, submitted to the Court the following points and authorities:

When Mr. Ludlow was under examination, he stated that, shortly after the accident happened, he went up to the driver and had some conversation with him. The defendant, by his counsel, objected to the admission in evidence of the statements of the driver: the Court overruled the objection, and the defendant excepted. The plaintiff then proved, by Mr. Ludlow, "that he asked the driver how the accident happened, when he stated that he had upset fifty coaches, and he did not believe the woman was as much hurt as she said she was." This conversation, it will be observed, took place after the accident had occurred. If it can be considered as the driver's account of the manner in which the accident occurred, it is still but his representation of a past occurrence, and he ought to have been called as a witness to testify. But the statements were not even made in reference to his conduct in the particular transaction, but in relation to what he had done on former occasions; and when, for aught that appears, he was not in the service of the defendant. If the fact had been established by competent testimony, that this driver had upset fifty coaches, it would have been pregnant evidence, before the jury, of his want of skill as a driver; and if his statement to Mr. Ludlow was admissible evidence to establish this fact, it tended strongly to prove his want of competent skill. The position assumed by the appellant is, that the declaration of the driver to the witness, "that he had upset fifty coaches," was not admissible and competent evidence for any purpose whatever.

The defendant's first prayer is based on the hypothesis that the jury would find, from the evidence, that the immediate and proximate cause of the overturning of the coach was the act of the plaintiff or his wife, or both, in leaping from or leaving the coach; and that, at the time of leaping from or leaving said coach, there did not exist any certain peril, nor any immediate danger, nor any reasonable apprehension of impending danger by remaining in the coach.

This prayer was framed with reference to the instruction of Lord Ellenborough, in Jones *vs.* Boyce, 1 Starkie's Rep. 393, 2 English Com. Law Rep. 482; and the language of the prayer was adopted from the language of his Lordship. It concedes that the defendant is liable for the negligence of the driver. It further concedes that even if the proximate cause of the injury was the act of the plaintiff or his wife, or both, the defendant was still liable, if there was want of skill, or if there was negligence or misconduct on the part of the driver; provided that such want of skill, or negligence, or misconduct of the driver, produced a state of case which placed the plaintiff and his wife, or either of them, in a situation of certain peril or immediate danger, or as was sufficient to create a reasonable apprehension of impending danger. But the prayer assumes the law to be that, in case the act of the party injured was the proximate cause of the injury, the defendant is not liable merely because there was default on the part of his driver, unless that default conduced to produce the injury; that is, unless there was a natural and reasonable connexion between the default of the driver, as the cause, and the injury, as the consequence; and that natural and reasonable connexion is assumed to be such as Lord Ellenborough has defined in the case above cited. In Story's Commentaries on the Law of Bailments, 377, the learned commentator, citing the case from Starkie, says: "And the liability of the coach proprietors will be the same, although the injury to the passenger is caused by his own act, as by leaping from the coach, if there is real danger, and it arises from the careless conduct of the driver."

The 2d, 3d, 4th, and 5th prayers were all framed with reference to the language of the instruction in the case of Jones *vs.* Boyce. It will be observed that the several prayers were not intended to deny, in toto, the plaintiff's right of action; but were limited to the particular injury incurred by the plaintiff's wife, by reason of the imprudence, carelessness, unreasonable alarm, or rashness of the plaintiff or his wife, imputed by the hypothesis of each respective prayer.

On the subject of reasonable apprehension of impending danger, some analogy may be found in the chapter "On Cruelty," in Paynter on Marriage and Divorce; and in the quotations from distinguished writers on the civil law, which will be found in the notes to that chapter.

The 6th prayer asserts, as a proposition of law, that if the plaintiff or his wife, or either of them, contributed, in fact, to produce

the injury, by leaping from the coach unnecessarily or rashly, incautiously or without ordinary care, that then the plaintiff is not entitled to recover in respect of said injury. The position is, that in case of mixed fault, the action will not lie; that the law will not speculate whether the fault of the defendant alone, without the concurrence of the fault of the plaintiff, would or would not have resulted in injury to the plaintiff; but that it is an answer to the action, in respect of any injury sustained, if it appears that the plaintiff aided in producing such injury. He must be himself blameless, before he can impute blame to another.

In cases of collision, it has been frequently so adjudged. Butterfield *vs.* Forrester, 11 East, 60. Flower *vs.* Adam, 2 Taunton, 314. Pluckwell *vs.* Wilson, 5 Carr. and Payne, 375. Luxford *vs.* Large, 5 Carr. and Payne, 421. Williams *vs.* Holland, 6 Carr. and Payne, 23. Turley, *vs.* Thomas, 8 Carr. and Payne, 104. Woolf *vs.* Beard, 8 Carr. and Payne, 373. Bridge *vs.* the Grand Junction Railway Co., 3 Meeson and Welsby, 244. Vanderplank *vs.* Miller, Moo. and M., 169. Harlow *vs.* Hammiston, 6 Cow. 191. Smith *vs.* Smith, 2 Pick. 621. Lane *vs.* Crumbie, 12 Pick. 177.

Now, this case, it is true, was not a case of collision. But in the cases cited, the gist of the action was negligence, and so it is in this. The case of Jones *vs.* Boyce was a case of a coach proprietor. It is true that the passenger carrier is bound " for the utmost care and diligence of very cautious persons." Story's Law of Bailments, 379. But if an injury is produced by the concurrent fault of both parties, by what legal alchymy can we analyse the result, for the purpose of discovering how much of the injury was produced by the fault of the defendant or his agent, and how much by the fault of the plaintiff; or whether, in fact, the injury would have resulted at all, but for the fault of the plaintiff? The defendant is liable, in damages, for the consequences of the driver's negligence or want of skill; but unless the effect can be apportioned, he may be made liable for what was really a consequence of the plaintiff's own fault; and how can it be apportioned? In the case of Hill *vs.* Waner, 2 Starkie's Rep. 377, 3 Eng. Com. Law Rep. 390, where there was negligence in the agents of both parties in taking down a party wall, it was ruled that " it was not competent to the plaintiff to attach that blame to the defendant which was the common blame of both."

The 16th prayer assumes that it is incumbent on the plaintiff to prove negligence. It concedes that proof of the facts of the overturning of the coach and the injury are prima facie evidence of negligence, and throws upon the defendant the onus of proving, not that the accident was not occasioned by the driver's fault, as ruled by the Court in their final instructions, but that the coachman was a person of competent skill in his business, that the coach was properly made, the horses steady, &c.—Story's Law of Bailments, 375, and the cases there cited. The injury may have been the result of inevitable accident, arising from the state of the road, or from the physical ina-

bility of the driver, caused by extreme and unusual cold; or it may have been occasioned by the fault of the plaintiff, or by the fault of the driver, or by mixed fault. The plaintiff, it is insisted, is bound to prove negligence, however slight, in order to maintain the action. Now, if the event itself is to be evidence of negligence, it would be right to vary the rule, and say that the defendant was bound to prove that there was no negligence. In the cases cited in the Court below, the breaking down resulted from some supposed negligence in preparation; but when it is satisfactorily shown that the driver is a person of competent skill, that the horses and coach, &c., were properly provided, it is shown that there was no want of due preparation for the journey. If, in travelling on a level road, a wheel comes off, or an axletree snaps, it is strong prima facie evidence of negligence in preparation; but mere proof of the breaking down, without showing the proximate cause of the breaking down, (as the coming off of the wheel, or the snapping of the axletree,) is not prima facie evidence of negligence. In our case, the mere overturning is ruled to be evidence of negligence, but the proximate cause of the overturning is not established. It was an open question upon the evidence. Upon this distinction, it is conceived that the instruction is not warranted by the cases; and that the burden of showing "that the accident was not occasioned by the driver's fault," was improperly thrown upon the defendant; and that it was, at least, rebutted by the hypothesis assumed in the 16th prayer.—Vide Lane vs. Crombie, 12 Pick. 177, and the cases cited, per curiam.

Mr. Johnson for the defendant.

The exception to the statement of the answer of the driver to Mr. Ludlow, was made before the evidence was given. The exception should have pointed out the part of the evidence which was objectionable, and not having done this it must be overruled. This is a familiar rule. But the evidence was proper. It cannot be denied that the reckless and heartless declarations of the driver to Mr. Ludlow, with his other conduct, as proved by other witnesses; made while Mrs. Saltonstall was suffering the most severe agony, were proper testimony to go to the jury in aggravation of the damages.

The following propositions are sustained by authorities.

1. For the sufficiency of the stage coach with reference to defects visible, or not visible, under ordinary examination, the carrier is responsible. 1 Carrington and Payne, 414. Sharp vs. Grey, 9 Bingh. 457.

2. The breaking down, and consequently the upsetting of the stage coach, unexplained, is prima facie evidence of negligence. Christie vs. Griggs, 2 Campbell, 79.

3. When there is danger in any particular part of the route, it is the duty of the driver of the stage to state its full extent to the passengers. Dudley vs. Smith, 1 Campbell, 167.

4. If a passenger is, by the negligence or want of skill of the

driver, or by the insufficiency of the carriage, in such a state of peril as to render an effort to escape from it, an act of prudence, and if in escaping he is injured, the owner of the stage is responsible. Jones *vs.* Boyse, 1 Stark. Rep. 393.

Mr. Justice BARBOUR delivered the opinion of the Court.

This is a writ of error to a judgment of the Circuit Court of the United States for the fourth circuit, and district of Maryland.

It was an action on the case, brought by the defendant in error, against the plaintiff in error, and Richard C. Stockton, to recover damages for an injury sustained by his wife, by the upsetting of a stage coach in which she was a passenger, and of which said Stockton and Stokes were the proprietors. The suit was brought in the name of Saltonstall alone; but there is in the record an agreement signed by the counsel of the parties, stipulating, amongst other things, that the plaintiff might recover in it, any damages which might be recovered in an action by himself and wife, or by himself alone.

The declaration alleges that the injury complained of, was caused by the negligence and want of skill of the driver, then in the employment of the said Stockton and Stokes, and engaged in driving their coach, in which the plaintiff's wife was a passenger at the time she received the injury. In the progress of the case, Stockton, one of the defendants, died, and his death having been suggested upon the record, the case proceeded against Stokes. He pleaded the general issue of "not guilty," on which issue was joined.

At the trial, the defendant took a bill of exceptions to the ruling of the Court; from which it appears, that he asked the Court to give to the jury sixteen several instructions, and the plaintiff asked of the Court two instructions; all of which, as well those asked by the defendant, as by the plaintiff, the Court refused. But the Court did give the jury the four following instructions, to wit:

1. That the defendant is not liable in this action unless the jury find that the injury of which the plaintiff complains was occasioned by the negligence or want of proper skill or care in the driver of the carriage, in which he and his wife were passengers: and the facts that the carriage was upset, and the plaintiff's wife injured, are prima facie evidence that there was carelessness, or negligence, or want of skill on the part of the driver, and throws upon the defendant the burden of proving that the accident was not occasioned by the driver's fault.

2. It being admitted that the carriage was upset, and the plaintiff's wife injured, it is incumbent on the defendant to prove that the driver was a person of competent skill, of good habits, and in every respect qualified, and suitably prepared for the business in which he was engaged; and that he acted on this occasion with reasonable skill, and with the utmost prudence and caution; and if the disaster in question was occasioned by the least negligence, or want of skill, or prudence on his part, then the defendant is liable in this action.

3. If the jury find there was no want of proper skill, or care, or caution on the part of the driver, and that the stage was upset by the act of the plaintiff or his wife, in rashly and improperly springing from it, then the defendant is not liable to this action: but if the want of proper skill or care of the driver placed the passengers in a state of peril, and they had at that time a reasonable ground for supposing that the stage would upset, or that the driver was incapable of managing his horses, the plaintiff is entitled to recover; although the jury may believe from the position in which the stage was placed by the negligence of the driver, the attempt of the plaintiff or his wife to escape, may have increased the peril, or even caused the stage to upset; and although they may also find that the plaintiff and his wife would probably have sustained little or no injury if they had remained in the stage.

4. If the jury shall find that the driver was a person of competent skill, and in every respect qualified and suitably prepared for the business in which he was engaged, and that the accident was occasioned by no fault or want of skill or care, on his part, or that of the defendant or his agents, but by physical disability arising from extreme and unusual cold, which rendered him incapable for the time to do his duty; then the defendant is not liable in this action.

Under these instructions, the plaintiff obtained a verdict for seven thousand one hundred and thirty dollars, for which the Court rendered a judgment in his favour; and from that judgment this writ of error is taken.

We consider it altogether unnecessary to notice any of the instructions asked for by the defendant, and which the Court refused to give, because those which they did give cover the whole ground; and therefore, it depends upon their correctness whether the judgment is to be affirmed or not.

We think that the Court laid down the law correctly in each and all of these instructions. It is certainly a sound principle that a contract to carry passengers differs from a contract to carry goods. For the goods, the carrier is answerable, at all events, except the act of God, and the public enemy. But although he does not warrant the safety of the passengers, at all events, yet his undertaking and liability as to them, go to this extent: that he, or his agent, if, as in this case, he acts by agent, shall possess competent skill; and that as far as human care and foresight can go, he will transport them safely. The principle is in substance thus laid down in the case of Christie vs. Griggs, 2 Campbell, 79.

So it is also in the case of Aston vs. Heaven, 2 Espinasse's Rep. 533, where it is said, that coach owners are not liable for injuries happening to passengers, from accident, or misfortune, where there has been no negligence, or default in the driver; that the action stands on the ground of negligence, but that a driver is answerable for the smallest negligence.

The principle is thus laid down in 2 Kent's Commentaries, 466: " The proprietors of a stage coach, do not warrant the safety of

passengers in the character of common carriers; and they are not responsible for mere accidents to the persons of the passengers, but only for the want of due care." What the author understood to be due care, will appear from this consideration, that in support of his proposition, he refers to the two cases which we have just cited.

In Story on Bailments, many cases are collected together upon this subject, in pages 376–7, as illustrative of the principle, which is by that author laid down in these words: "If he (that is, the driver) is guilty of any rashness, negligence, or misconduct, or is unskilful, or deviates from the acknowledged custom of the road, the proprietors will be responsible for any injuries resulting from his acts. Thus, if the driver drives with reins so loose that he cannot govern his horses, the proprietors of the coach will be answerable. So if there is danger in a part of the road, or in a particular passage, and he omits to give due warning to the passengers. So, if he takes the wrong side of the road, and an accident happens from want of proper room. So if, by any incaution, he comes in collision with another carriage." To which we will add the further example: wherever there is rapid driving, which, under the circumstances of the case, amounts to rashness. In short, says the author, he must in all cases exercise a sound and reasonable discretion in travelling on the road, to avoid dangers and difficulties; and if he omits it, his principals are liable.

The only case which is recollected to have come before this Court on this subject, is that of Boyce vs. Anderson, 2 Peters, 150. That was an action brought by the owner of slaves, against the proprietor of a steamboat, on the Mississippi, to recover damages for the loss of the slaves, alleged to have been caused by the negligence or mismanagement of the captain and commandant of the boat. The Court distinguished slaves, being human beings, from goods; and held, that the doctrine as to the liability of common carriers for mere goods, did not apply to them, but that in respect of them, the carrier was liable only for ordinary neglect. The Court seem to have considered that case as being a sort of intermediate one between goods and passengers. We think, therefore, that any thing said in that case, in the reasoning of the Court, must be confined in its application to that case; and does not affect the principle which we have before laid down. That principle, in our opinion, fully justifies the first and second instructions given by the Court; except that part of those instructions which relates to the onus probandi: and although we think this portion of the instructions as well founded, in justice and law, as the other, yet it rests upon a different ground. The first part has relation to the liability of the defendant, the second, to the question, on whom devolves the burden of proof. If the question were one of the first impression, we should, upon the reason and justice of the case, adopt the principle laid down by the Circuit Court. But although there is no case which could have the weight of authority in this Court, we are not without a decision in relation to it. The very point was decided in

[Stokes vs. Saltonstall.]

2 Camp. 80; where it is said by Mansfield, Chief Justice, that he thought the plaintiff had made a prima facie case, by proving his going on the coach, the accident, and the damage he had suffered.

It is objected, however, in the printed argument which has been laid before us, that although the facts of the overturning of the coach, and the injury sustained, are prima facie evidence of negligence, they did not throw upon the defendant the burden of proving that such overturning and injury were not occasioned by the driver's default, but only that the coachman was a person of competent skill in his business; that the coach was properly made, the horses steady, &c.

Now, taking that portion of the first and second instructions which relates to the burden of proof together, we understand them as substantially amounting to what the objection itself seems to concede to be a proper ruling, and what we consider to be the law. For although, in the first, it is said, that these facts threw upon the defendant the burden of proving that the accident was not occasioned by the driver's fault; yet, in the second, it is declared, that it was incumbent on the defendant, in order to meet the plaintiff's prima facie case, to prove that the driver was a person of competent skill, of good habits, and in every respect qualified, and suitably prepared for the business in which he was engaged; and that he acted on the occasion with reasonable skill, and with the utmost prudence and caution.

This affirmative evidence, then, was pointed out by the Court as the means of proving what was in terms stated in the form of a negative proposition before, that is, that the accident was not occasioned by the driver's fault. The third instruction also announces a principle, which we think stands supported by the soundest reason; and we should, therefore, adopt it as being correct, if it were altogether a new question.

But this, too, is in accordance with the doctrine of Lord Ellenborough, in 1 Starkie's Cases, 493, in which he says, that to enable the plaintiff to sustain the action it is not necessary that he should have been thrown off the coach; it is sufficient if he were placed by the misconduct of the defendant, in such a situation as obliged him to adopt the alternative of a dangerous leap, or to remain at certain peril; if that position was occasioned by the fault of the defendant, the action may be supported. On the other hand, if the plaintiff's act resulted from a rash apprehension of danger, which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover.

The instruction which we are now considering is framed in the spirit of the principle which we have just stated, and we think it wholly unexceptionable.

The fourth instruction which was given to the jury was in favour of the defendant, now plaintiff in error, and, therefore, need not be

considered. Upon the whole, we think that there is no error in the judgment. It is, therefore, affirmed with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Maryland, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the Circuit Court in this cause be, and the same is hereby, affirmed with costs and damages at the rate of six per centum per annum.