CaeutheRS, J.,
delivered the opinion of the Court.
The plaintiff came aboard of the steamboat “ Tennessee,” at Eddyville, Ky., of which the defendant was owner and captain, and took passage for himself and negro man slave, for Nashville. The slave had been runaway from his master *665 and recaptured. He was brought upon the boat with his arms bound, and so continued. He told the cleric he would rather die than return home, of which his master was immediately informed, and cautioned, and he said there was no danger. A few miles below Nashville, the slave was missing, and there is no doubt but that he threw himself out of the boat and was drowned, though no one saw him do the act, as his body was soon after found, and sufficiently identified, by the fact that his arms were still tied with a cord, as when he was last seen upon the boat. There was some proof tending to show that the captain had untied him, and set him to pumping, but replaced the cords when he had finished.
When the case was before us at a previous term, we reversed for errors in the charge. But the same questions are not now in the case.
A new trial is again asked, for other supposed errors of law in the instructions to the jury.
The Court held, “ that if the slave was put cm the defendant’s boat to be carried for hire, or reward, the defendant would be bound to ordinary diligence only in taking care of him and securing him against infurtes or escape.”
This charge is sustained by the authority of the Supreme Court of the United States, in Boyce v. Anderson, 2 Peters, 156. The principle there settled, is, that in the conveyance of slaves for pay, the carrier is liable only for ordinary neglect.” The distinction is there taken, by Chief Justice Marshall, between the case of slaves and other property. The great rigor of the law, rendered necessary by necessity and sound policy, as applicable to common carriers of goods, and inanimate property, is there held not to apply to the case of negroes, who are intelligent beings, although a species of property. They have volition, and are endowed with reason and feelings, aird cannot be safely stored away like a bale of goods, or a cammon package. The rules that apply to slaves, and govern the liability of carriers in relation to them, more nearly resemble those which relate to passengers, *666 than common goods. The case of slaves, seems, as is remarked by the Court, in Stokes v. Saltonstall, 13 Peters, 192, to be a sort of intermediate one between goods and passengers. As to them, the principle settled in the former case, is not controverted.
In Angelí on Car., sec. 122, the doctrine of Boyce v. Anderson is adopted, and sustained by reference to later cases in South Carolina and Alabama ; or rather, these cases conform to the former, and adopt its ¡principle.
We think there can be no doubt of the correctness of the charge on this point. Considering slaves as property, it is certainly an exception to the general law of liability, in relation to common carriers. But it is an exception produced by reason of necessity, from the nature of the property. But in a case like this, where the master was on board, having his slave under his own care and management, and the loss resulted from the slave’s own act, by destroying himself, and not from any want of skill or management on the part of the captain, or his employees, we could not hesitate, independent of those high authorities, to apply to the case the mitigated rule stated by His Honor. A question might arise, if the case required it, whether under the circumstances of this case, the master having charge and control of his own slave, any duty at all devolved upon the carrier, without an express undertaking, to watch and guard his movements, so as to prevent his leaping overboard. So far as we can see, the plaintiff asked nothing more than to be carried with his slave for the ordinary pay as passengers. If the slave had been placed upon the boat to be carried without his master, the question would, perhaps, be different. But lot that be as it may, the law, as laid down in the charge, applies to the latter case, and, of course, cannot be complained of by the plaintiff, whose case falls under the first hypothesis, and for that reason might probably fall under a more mitigated rule as to the accountability of the carrier.
A question is made upon the rulings of the court in regard to the evidence. Whatever error was committed in that *667 respect, was in favor of the plaintiff, and of that he cannot complain. It was right not to admit the hill of exceptions, made in the former trial, to show what the witness, Smith, then said, because his attendance could not be had upon the last trial; and we are not aware of any authority that would admit what he swore before, to be proved by others as he was not dead. But certainly, if that could be done, it was not wrong to allow him to be impeached by the proof of contradictory statements, or in any other legal mode.
The judgment will be affirmed.