McIlvaine, J.
In disposing of' this case, we will confine ourselves chiefly to questions arising upon the charge of the court as given to the jury at the time of the last trial, at special term.
. As to the facts of the case, we intend to express no opinion, further than to show that the testimony before the jury was such as to require the court to instruct the jury as to the law concerning contributory negligence, as well as to the degree of care required of the defendant below in the management of its business, for the want of which the law will hold it responsible in damages in cases where injury to others (than passengers) results therefrom.
The defendant below, at the time of the occurrence which resulted in the death of the plaintiff’s intestate, was engaged in the management of a street railroad in one of the streets of Cincinnati and in running cars thereon, drawn by horses, for the transportation of passengers. Henry Stallmann was not a passenger thereon, but was a teamster engaged in driving his wagon and team of mules along the street upon which the defendant’s railroad was located. There were three other teams in company with Stallmann, all loaded with pork, two before and one behind him. These several teams had occupied the track of the railroad before the approach of the defendant’s ear, at which time they left the track, on the same side; and the ear had passed the hindmost team before it had arrived in close proximity to Stallmann and his team. The car and the several teams were traveling in the same direction. And at the time and place where the car overtook Stallmann and his team (at which time he was walking and driving at the side of his wagon next to the ear), there was barely, and possibly not at all, sufficient space between the car and *19 wagon for him to stand or walk in. By some means or other, while in this position, Stallmann was prostrated upon the street, and received the injuries of which he, shortly afterward, died. Both the driver of the car and Stallmann, before the injury was inflicted, knew the situation and condition of each other and of their respective vehicles.
Whether.the injury which caused the death of Stallmann was the direct result of a stroke by the car causing him to fall, or by being run over by his own wagon, after accidentally falling, was matter in dispute at the trial.
We purposely omit stating the tendency of the proof in more detail, as the above outline is sufficient to a fair understanding of the main questions considered in this case.
The rules of law which govern in actions for negligence in cases like the present, have been fully and clearly settled by former decisions of this court. Not only as to what constitutes culpable negligence on the part of the defendant, but also as to what amounts to contributory negligence on the part of the injured party, the general effect of such contributory negligence, and the circumstances under which the injured party is, in law, relieved from its consequences. So far as it is possible to abstract the principles of law from the facts which constitute actionable or contributory negligence, and to define and apply them, we have little to do, except to refer to those decisions.
“In an action against a railroad company to recover damages caused to third persons by the train while in motion, no recovery can be had unless the employes were, at the time,.guilty of negligence or want of due care; nor if the party injured was also guilty of negligence contributing directly to the injury. The degree of care required in such cases of the employes, and also of the party injured, is merely ordinary care and prudence, the perils to be encountered, and all other circumstances under which the injury was inflicted and received, being considered.” C. C. and C. R. R. Co. v. Terry, 8 Ohio St. 570. And Peck, J., in delivering the opinion of the court, on page 581, defines ordinary care to be “ that degree of care which persons of *20 ordinary care and prudence are accustomed to use and employ under the same or similar circumstances, in order to conduct the enterprise in which they are engaged to a safe and successful termination, having due regard to the rights of others and the objects to be accomplished.”
In Kerwhacker v. C. C. and C. R. R. Co., 3 Ohio St. 195, the following is laid down : “ That the general rule is, that where the parties are mutually in fault, or, in other words, where negligence of the same nature in each party has cooperated to produce the injury, the party sustaining the loss is without remedy, but that this rule is subject to the following qualifications:
“1. The injured party, although in the fault to some extent, at the same time may, notwithstanding this, be entitled to reparation in damages for an injury which could not have been avoided by ordinary care on his part.
“ 2. Where the negligence of the defendant, in a suit upon such ground of action, is the proximate cause of the injury, but that of the plaintiff only remote, consisting of some act or omission not occurring at the time, the action is maintainable.
“ 3. Where the party has in his custody or control dangerous implements or means of injury, and negligently uses them or places them in a situation unsafe to others, and another person, although at the time even in the commission of a trespass or otherwise somewhat in the wrong, sustains an injury, he may be entitled to redress.
“ 4. And where the plaintiff, in the ordinary exercise of his own rights, allows his property to be in an exposed or hazardous position, and it becomes injured by the neglect of ordinary care and caution on the part of the defendant, he is entitled to reparation.”
It will be observed that a case wherein the fault of the defendant is malicious, or his neglect is so wanton and gross as to be evidence of voluntary and willful injury on his part, and the fault of the injured party is merely the want of ordinary care, does not fall within the scope of the general rulej the faults not being of the.same nature. And *21 I will add that, in my opinion, the qualifications attached to the rule, in that ease, should be regarded as illustrations of, rather than exceptions to, the rule; but however that may be, we find in Timmons v. Central Ohio R. R. Co., 6 Ohio St. 108, that the rule as there laid down, and the qualifications attached, were approvingly cited and referred to in the opinion of the court.
Assuming, therefore, that the foregoing is the settled law of this state in cases of this kind, how stand the instructions of the court in the charge under consideration?
Passing for the present so much of the charge as relates to the respective rights and duties of the defendant and the general public, in relation to the use of the street, and to each other, the court instructed the jury as follows:
“ Gentlemen, the rule is well stated by all the counsel, that if there is fault upon both sides, there can not, as a general rule, be a recovery; but if there is upon one side, and yet the other party could have avoided the accident, it is his duty to do so. It would be imprudent, it would be the height of almost madness, for a man to pass across the street when he saw a wagon at full speed a short distance from him. He would doubtless be in fault, but because that wagoner, who has charge of the horses and controlled them by the reins, sees this man thus imprudently placing himself in the way of danger, he has no right to run over him if he could avoid it. If there is room to the right hand or to the left, and he has the power to do so, he must pursue that course. So, you see, the rule that the party who complains must show himself without fault is subject to another rule, that the party who is charged with having committed the injury must show that he is without fault himself. And no man can be shown without fault unless he has done all in his power to avoid the injury. ****:(:**■*
“ Here you will look at all the circumstances of the case. Was it in the power of this driver, having passed the first wagon, to have avoided the second one ?
“ This is the whole case. If you find for the plaintiff, *22 the question of damage will be altogether with yourselves. You can take into consideration the same elements you would if the party was alive, except the law allows nothing for consolation, as it is termed, or for the loss of those domestic pleasures which grow out of the marital relation. They die with the party, and all the law allows is mere compensation for the support of the wife and her daughter, not exceeding a certain sum.”
Thus the regular charge to the jury ended, and, if we rightly understand the force of the language used, the jury must have been impressed with the idea that contributory negligence on the part of the plaintiff’s intestate would not defeat her right to recover, even though such negligence had reached “ the height of almost madness,” unless the defendant had shown that its agents had exercised, at the same time, all the care and caution within the scope of human foresight and possibility.
Such is not the law, as we have shown above. But we doubt whether the learned judge who delivered the charge so intended to give it. We doubt it, because when the defendant afterward excepted to the question : “ Was it in the power of this driver, having passed the first wagon, to have avoided the second one?” as propounded to the jury, the court then qualified it by adding, “ with reasonable care.” The question thus qualified would have been a proper one for tlie jury under the fourth qualification to the general rule as given in Kerwhacker’s case, provided the fault of Stallmann (if any) had been committed while engaged “in the ordinary exercise of his own rights.” Indeed, it may well be doubted whether the judge intended the above language in the charge to be taken according to our understanding of its natural and ordinary import, from the further fact that in several instances, in qualifications subsequently made to instructions prayed for by defendant, the court stated that the defendant was required to use only “ ordinary care.” Nevertheless, we think the error in the charge was not thus cured, especially as the seventh exception to the charge, which was directly made to the objectionable *23 part above stated, in the hearing of the jury, was permitted by the court to be entered without any qualification or remark whatever.
We also find, in other parts of the regular charge, as given to the jury, other instructions tending so strongly to impress upon the jury the belief that the law requires of street railroad companies the exercise of the highest degree of care in the discharge of their duties toward the general public, that it is not at all probable that their minds were disabused upon the subject by any qualification or correction that was subsequently made. Eor instance, in - the early part of the charge, the court said: “It is the duty of every railroad company which traverses our streets to provide careful, competent, and skillful drivers, and those thus employed are bound to use all their skill and all proper prudence and care in the management of the horses committed to their charge. They have but one track upon which the cars are to be drawn. They are aware that upon a public thoroughfare, upon which every inhabitant of,the city and every person has a right to pass and repass without molestation, taking care that they do not obstruct the passage of the railway car, and yet claiming for themselves, as they have a right to do, the same benefits that the proprietors of the railway cars claim, consistent with their several occupations. The city unquestionably has the right to permit these street railroads to be established upon the public highway, but that right is subordinate to the more extended right of all to travel upon the same highway. In all these matters there must be mutual accommodation. One must not prevent the free passage of the other. There must be accommodation between them.”
To say the least, this is strotig language by which to define ordinary care, or that degree of care which is usually exercised by persons of average skill and prudence, qnder the same or similar circumstances.
Again, for the purpose of illustrating to the jury the rule, that in actions for negligeqce it' is immaterial whether the injury was the direct or indirect result of the alleged negli *24 gence, the court read an extract from the opinion in Stokes v. Saltonstall, 13 Peters, 191, as follows:
“ In an action against the owner of a stage coach used for carrying passengers, for an inj ury sustained by one of the passengers by the upsetting of the coach, the owner is not liable unless the injury of which the plaintiff complains was occasioned by the negligence or want of proper skill or care in the driver of the carriage in which he and his wife were passengers ; and the facts that the carriage was upset and the plaintiff’s wife injured, are prima facie evidence that there was carelessness, or negligence or want of skill, on the part of the driver, and throws upon the defendant the burden of proving that the accident was not occasioned by the driver’s fault.
“It being admitted that the carriage was upset, and the plaintiff’s wife injured, it is incumbent on the defendant to prove that the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged; and that he acted on this occasion with reasonable skill, and with the utmost prudence and caution, and if the disaster in question was occasioned by the least negligence or want of skill or prudence on his part, then the dependant is liable in the action.
“If the want of proper skill or care of the driver placed the passengers in a state of peril, and they had, at that time, a reasonable ground for supposing that the stage would upset, or that the driver was incapable of managing his horses, the plaintiff is entitled to recover; although the jury may believe, from the position in which the stage was placed by the negligence of the driver, the attempt of the plaintiff or his wife to escape may have increased the peril, or even caused the stage to upset, and although they may also find that the plaintiff and his wife would probably have sustained little or no injury if they had remained in the stage.”
Now, the third paragraph of this extract is undoubtedly a fair statement of the rule, in an action by a passenger against a common carrier for hire, and it might not mis *25 lead, as an illustration of the principle, if given in a cas6 wherein the want of ordinary care is the ground of liability. But it is difficult to see how the principle was at all illustrated by the first two paragraphs in the extract. By the first, the jury were clearly informed as to the amount of proof which would make & prima facie case of negligence, in an action against a common carrier of passengers for hire, for an injury to a passenger; and by the second paragraph, the jury were given to understand, that upon such a prima fade case being made, the burden was on the defendant to prove that he had acted not only with reasonable skill, but with the “ utmost prudence and caution,” and if the disaster was occasioned by “the least negligence or want of skill or prudence,” he would be liable.
Now it is true, again, that after the regular charge was concluded, and the defendant had excepted to so much of the charge as had been quoted from Stokes v. Saltonstall, the court “ instructed the j ury that the language of said case was quoted not to. determine the degree of care required, but to show that it was immaterial whether the negligence of the driver (of the car) was the direct or indirect cause of the inj ury.” And it is claimed that this last instruction was sufficient to guard the jury against any improper application of the rules as laid down in Stokes v. Saltonstall.
~We think otherwise, not solely because the first two paragraphs ought not to have been read to the jury, for the reason that the law announced therein was wholly inapplicable to the case at bar, but because the jury were not told in any part of the charge, that the law requires a higher degree of care to be exercised by common carriers for hire toward passengers than toward strangers, or that the amount or burden of proof required in one case was different from that required in the other. True, they were told that “ ordinary care ” only was required of the defendant in the case on trial, while the rule in Stokes v. Saltonstall was stated to be “ the utmost care and caution; ” yet, as *26 the difference was not explained, it is more than possible, that’the jury would conclude, that in cases where human life was involved, “ the utmost care and caution ” would amount to “ ordinary care and caution” only. Such, however, is not the law, as we understand it, for the double reason, that a stranger is not to the same degree within the power of the defendant to injure, nor has he paid a price for the exercise of diligence toward him.
Rut it must not be understood, for these reasons, that the law’s regard for human life does not, under all circumstances, add greatly to the diligence that would otherwise be required.
Without considering other objections made to the charge as given and refused, suffice it to say, we are unanimously of the opinion that the probable, if not the necessary, effect of the charge, taken as a whole, was misleading and prejudicial to the plaintiff in error, and that the judgments of the Superior Court, both at general and special terms, must be reversed.
It is claimed, however, by defendant m error, that this cause, if reversed, should not be remanded for further trial, as it has been tried three times already, che trial in each instance resulting in a verdict for the 'defendant in error’ — • the first time for $3,000, and the second time for $5,000. That the first verdict was set aside for the misconduct of a juror, but the second verdict having, as is claimed, been set aside without good cause, this court should now, upon review of the whole record, reverse the judgment by which the second verdict was set aside, and render judgment thereon, or remand for the purpose of having judgment rendered on the second verdict in the court below.
As a general rule, where a new trial is granted on a motion to set aside a verdict and grant a new trial, and a new trial and judgment are afterward had in the case, a reviewing court, on a proceeding in érror to reverse the last judgment, will not review the action of the court in granting the new trial, in case of reversal of the last judgment: *27 and we see nothing in this case to take it out of the general rule.
New trial granted, and cause remanded for further proceedings. ,