David LYONS, individually and as the personal representative of the Estate of Esther Jane Hunter–Lyons, and as father and legal guardian of Benjamin Murphy Lyons, Joshua Caleb Lyons, MacAaron Hunter–Lyons, Robert Jack Hunter–Lyons, and Duley Everett Lyons, Appellants,

v.

MIDNIGHT SUN TRANSPORTATION SERVICES, INC., Appellee.

No. S–7093.

Supreme Court of Alaska.

Dec. 27, 1996.

**1203**

Mark A. Sandberg, Sandberg, Wuestenfeld & Corey, Anchorage, for Appellants.

Michael L. Lessmeier, Gregory W. Lessmeier, Lessmeier & Winters, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

PER CURIAM.

## I. FACTS AND PROCEEDINGS

Esther Hunter–Lyons was killed when her Volkswagen van was struck broadside by a truck driven by David Jette and owned by Midnight Sun Transportation Services, Inc. When the accident occurred, Jette was driving south in the right-hand lane of Arctic Boulevard in Anchorage. Hunter–Lyons pulled out of a parking lot in front of him. Jette braked and steered to the left, but

Hunter–Lyons continued to pull out further into the traffic lane. Jette's truck collided with Hunter–Lyons's vehicle. David Lyons, the deceased's husband, filed suit, asserting that Jette had been speeding and driving negligently.

At trial, conflicting testimony was introduced regarding Jette's speed before the collision. Lyons's expert witness testified that Jette may have been driving as fast as 53 miles per hour. Midnight Sun's expert testified that Jette probably had been driving significantly slower and that the collision could have occurred even if Jette had been driving at the speed limit, 35 miles per hour. Lyons's expert later testified that if Jette had stayed in his own lane, and had not steered to the left, there would have been no collision. Midnight Sun's expert contended that steering to the left when a vehicle pulls out onto the roadway from the right is a normal response and is generally the safest course of action to follow.

Over Lyons's objection, the jury was given an instruction on the sudden emergency doctrine.[1] The jury found that Jette, in fact, had been negligent, but his negligence was not a legal cause of the accident. Lyons appeals, arguing that the court should not have given the jury the sudden emergency instruction.

## II. ANALYSIS AND DISCUSSION

The sudden emergency doctrine is a rule of law which states that a person confronted with a sudden and unexpected peril, not resulting from that person's own negligence, is not expected to exercise the same

---

1. Jury Instruction # 17 read in its entirety:

Midnight Sun claims that it is not liable for plaintiffs' harm because David Jette acted with reasonable care in an emergency situation.

In an emergency, a person is not expected or required to use the same judgment and care that is required in calmer and more deliberate moments. If, in an emergency, a person acts as a reasonably careful person would act in a similar emergency, there is no negligence even though afterwards it might appear that a different course of action would have been better and safer.

For Midnight Sun to win on this claim, you must decide that it is more likely true than not true that:

1. there was an emergency situation which was a sudden and unexpected peril presenting actual or apparent imminent danger to someone;
2. David Jette did not cause the emergency; and
3. David Jette acted as a reasonably careful person would have acted in similar circumstances.

If you do not find all of these three facts, then you should decide whether Midnight Sun was negligent on the basis of the other instructions.

judgment and prudence the law requires of a person in calmer and more deliberate moments. The person confronted with the imminent peril must, however, act as a reasonable person would under the same conditions. *Beaumaster v. Crandall,* 576 P.2d 988, 991 (Alaska 1978).

Lyons argues that it was error for the trial court to give the sudden emergency instruction to the jury in this case; that the sudden emergency instruction is never appropriate in an automobile accident case; and that the instruction is incompatible with Alaska's comparative negligence system of apportioning tort liability.

Midnight Sun maintains that the sudden emergency instruction was warranted by the facts and is not incompatible with the comparative fault system.

### A. *Any Error Was Harmless*

■ We find that Lyons has little cause to complain of the sudden emergency instruction because the jury decided the issue in his favor. To the question "Was Midnight Sun's employee, David Jette, negligent?" the jury answered "YES." The jury finding of negligence indicates that the jury concluded David Jette was driving negligently or responded inappropriately when Ms. Hunter–Lyons entered the traffic lane and, thus, did not exercise the care and prudence a reasonable person would have exercised under the circumstances.

■ However, Lyons's claims were defeated on the basis of lack of causation. Although the jury found Jette to have been negligent, it also found that this negligence was *not* the legal cause of the accident. Duty, breach of duty, causation, and harm are the separate and distinct elements of a negligence claim, all of which must be proven before a defendant can be held liable for the plaintiff's injuries. *See Alvey v. Pioneer Oil-field Servs., Inc.,* 648 P.2d 599, 600 (Alaska 1982) (listing elements of negligence in context of motion for summary judgment as duty, breach of duty, injury, and *cause* ). The sudden emergency instruction addresses only the standard of care imposed on all people to act as a reasonable person would under the circumstances. The instruction could not have infected the jury's finding that Jette was not the legal cause of Ms. Hunter–Lyons's death.

■ Further, we cannot say that the jury's finding of lack of causation was unreasonable.[2] There was evidence presented at trial from which the jury could reasonably have drawn the conclusion that even though Jette was driving negligently, his negligence was not the proximate cause of the accident. Midnight Sun introduced expert testimony to the effect that the primary cause of the accident was Ms. Hunter–Lyons's action in pulling out of the parking lot in front of an oncoming truck. Terry Day, an accident reconstruction specialist testified that, depending on how fast Ms. Hunter–Lyons was moving, the accident could have happened even if Jette had been driving within the speed limit. Midnight Sun also introduced expert testimony to the effect that Jette responded properly to the unexpected introduction of an automobile in his traffic lane. Although all of this testimony was disputed by Lyons, a reasonable jury could have concluded that Ms. Hunter–Lyons caused the accident by abruptly pulling out in front of an oncoming truck, and that David Jette's negligence was not a contributing factor.[3] With the element of causation lacking, even the most egregious negligence cannot result in liability.

### B. *Sudden Emergency Instruction Disapproved*

■ Although any possible error resulting from the use of the sudden emergency in-

---

2. We will not overturn a jury's factual finding if the evidence reasonably supports it. *Nome 2000 v. Fagerstrom,* 799 P.2d 304, 310 n. 8 (Alaska 1990).

3. *See, e.g., Berry v. Sugar Notch Borough,* 191 Pa. 345, 43 A. 240 (1899) (There, a motorman was injured when a tree fell on a train car during a wind storm. The motorman was admittedly driving faster than allowed by ordinance, but except for placing the car at the exact spot where the tree would fall at the exact time it fell, speed had nothing to do with causing the accident.). *See also Dombeck v. Chicago, M., St. P. & P.R. Co.,* 24 Wis.2d 420, 129 N.W.2d 185, 192–93 (1964).

struction was rendered harmless by the jury finding that Jette's negligence was not a legal cause of the accident, we take this opportunity to disapprove of the instruction's further use. It adds nothing to the established law that the duty of care, which all must exercise, is to act reasonably under the circumstances. The instruction is potentially confusing. Although we cannot say that the instruction is never appropriate, we discourage its employment. In support of this admonition, we offer the following background.

The sudden emergency doctrine arose as a method of ameliorating the, sometimes harsh, "all or nothing" rule in contributory negligence systems. For example, in *Stokes v. Saltonstall*, 38 U.S. 181, 13 Pet. 181, 10 L.Ed. 115 (1839), the United States Supreme Court approved the use of an early version of the sudden emergency instruction. *Id.* at 193. In that case, the plaintiff and his wife were injured while leaping from a careening coach piloted by a drunken driver. *Id.* at 182. The defendant claimed contributory negligence on the part of the plaintiffs which would have barred all recovery. *Id.* at 187–88. The court endorsed the doctrine wholeheartedly, stating:

> [T]o enable the plaintiff to sustain the action it is not necessary that he should have been thrown off the coach; it is sufficient if he were placed by the misconduct of the defendant, in such a situation as obliged him to adopt the alternative of a dangerous leap, or to remain at certain peril; if that position was occasioned by the fault of the defendant, the action may be supported. On the other hand, if the plaintiff's act resulted from a rash apprehension of danger, which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not entitled to recover.

*Id.* at 193.

Although the doctrine came out of the contributory negligence regime, there is nothing about it which is inherently incompatible with a comparative fault system. Comparative negligence is a method of apportioning liability for a particular accident among the various parties who have been deemed negligent. The sudden emergency doctrine, in turn, is an expression of the applicable standard of care against which particular actions are judged in order to determine whether they were negligent in character. The fault of one person, determined in the light of a sudden emergency instruction, can be compared to the fault of another person, whose negligence may have created the emergency, with no logical inconsistency. Other courts have rejected the contention that the instruction cannot be used in a jurisdiction which has adopted a system of comparative negligence. *Young v. Clark*, 814 P.2d 364, 368 (Colo.1991); *Weiss v. Bal*, 501 N.W.2d 478, 481 (Iowa 1993) ("[W]e reject plaintiffs' argument that such an instruction has no place in a comparative fault scheme."); *Ebach v. Ralston*, 510 N.W.2d 604, 610 (N.D. 1994).

Although not inherently inconsistent with modern methods of apportioning liability, the sudden emergency instruction has, nevertheless, come under criticism, and some states have limited or abolished it. Reasoning that because the standard of care is expressed in terms of a reasonable person under the circumstances, several courts have concluded that the instruction is wholly redundant. Mississippi eliminated the instruction in *Knapp v. Stanford*, 392 So.2d 196 (Miss. 1980), because the court believed the instruction only served to obfuscate the operation of the comparative negligence statute, and was often interpreted as requiring a higher standard of proof for a finding of negligence. *Id.* at 198. The justices ruled that the wiser policy would be to apply the general rules of negligence to all situations, and the jury should be left to consider only what a reasonable person would have done under the circumstances of a given case. *Id.* at 199. Likewise, Nebraska's highest court found that the instruction served no useful purpose. In *McClymont v. Morgan*, 238 Neb. 390, 470 N.W.2d 768 (1991), the trial court refused to give the plaintiff's proposed instruction on the effect of an emergency. The supreme court affirmed, stating that the sudden emergency instruction gives undue emphasis to one aspect of the standard of care, and to one party's argument. *Id.* 470 N.W.2d at 770. The effect of the emergency on the standard of care might still be argued to the jury. *Id.*

Other courts, while not banning the instruction altogether, have strongly discouraged its use. *Ellwood v. Peters,* 182 So.2d 281 (Fla.App.), *cert. denied,* 188 So.2d 814 (Fla.1966); *DiCenzo v. Izawa,* 68 Haw. 528, 723 P.2d 171 (1986); *Keel v. Compton,* 120 Ill.App.2d 248, 256 N.E.2d 848 (1970); *Gagnon v. Crane,* 126 N.H. 781, 498 A.2d 718 (1985); *McKee v. Evans,* 380 Pa.Super. 120, 551 A.2d 260, *app. denied,* 522 Pa. 600, 562 A.2d 824 (1988).

Several courts have forbidden giving the instruction in automobile accident cases. Montana's supreme court, in *Simonson v. White,* 220 Mont. 14, 713 P.2d 983 (1986), found no reason to give the sudden emergency instruction in an automobile accident case stating that the instruction adds nothing to the applicable law in any negligence case, that a driver must exercise due care under the circumstances, and that it tends to leave jurors with the impression that an emergency somehow excuses the driver from the ordinary standard of care. *Id.* 713 P.2d at 989. An Oregon court has also expressed reservations about the use of the instruction in automobile cases. *Templeton v. Smith,* 88 Or.App. 266, 744 P.2d 1325 (1987), *review denied,* 305 Or. 45, 749 P.2d 1182 (1988).[4]

In *Finley v. Wiley,* 103 N.J.Super. 95, 246 A.2d 715 (App.Div.1968), a New Jersey court stated it "entertain[ed] grave doubt as to whether a sudden emergency charge should ever be given in an ordinary automobile accident case." *Id.* 246 A.2d at 719. The *Finley* court felt that the unexpected hazards of driving are, in fact, to be expected. *Id.* Quoting Prosser, *Torts,* pp. 172–73 (3d ed. 1964) it said, "[U]nder present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles in the street...." *See also Paiva v. Pfeiffer,* 229 N.J.Super. 276, 551 A.2d 201, 204–05 (App.Div.1988).

We believe that the sudden emergency instruction is a generally useless appendage to the law of negligence. With or without an emergency, the standard of care a person must exercise is still that of a reasonable person under the circumstances. With or without the instruction, parties are still entitled to present evidence at trial which will establish what the circumstances were, and are also entitled to argue to the jury that they acted as a reasonable person would have in light of those circumstances. Thus, barring circumstances that we cannot at the moment hypothesize, a sudden emergency instruction serves no positive function. Further, the instruction may cause confusion by appearing to imply that one party is less blameworthy than the other. Therefore, we hold that it should not be used unless a court finds that the particular and peculiar facts of a case warrant more explanation of the standard of care than is generally required.

### III. CONCLUSION

Based on the above, we conclude that any error in giving the instruction was harmless. However, given the redundancy of the instruction and its potential for sowing confusion, we discourage its use in future cases.

AFFIRMED.

---

**4.** *But cf. Rambo v. McCulloch,* 90 Or.App. 392, 752 P.2d 347 (1988) (even though instruction should be avoided, it is not error to give it under appropriate circumstances).