### John Le Barron *vs.* East Boston Ferry Company.

A ferry company, being common carriers of passengers, are bound to furnish reasonably safe and convenient means for the passage of teams from their boats, appropriate to the nature of their business, and to exercise the utmost skill in the provision and application of the means so employed; but they are not bound to adopt and use a new and improved method, because it is safer or better than the method employed by them, if it is not requisite to the reasonable safety or convenience of passengers, and if the expense is excessive; and the cost of such improved method may be a sufficient reason for their refusing to adopt it.

In an action against a ferry company to recover damages sustained in passing from their boat, through the negligence of the defendants in failing to provide a safe and sufficient drop over which to pass, proof of due care on the part of the plaintiff, and of the injury, will not raise a presumption of law that the defendants were negligent, or change the burden of proof which rests upon the plaintiff to prove their negligence; but the same may be taken into consideration by the jury and allowed such weight as they think reasonable, in view of the whole evidence.

Tort against a ferry company to recover damages for a personal injury sustained in passing from their boat, at East Boston.

The declaration alleged that the defendants maintain a ferry between Boston and East Boston, for the ferriage of persons, horses, vehicles and merchandise, and the plaintiff drove a team, attached to a loaded sled, upon their boat at Boston, to be ferried to East Boston, and the defendants were bound to furnish and secure to him careful ferriage and fit and proper means for safe egress from their boat, but failed to do so, but the means therefor were insufficient; and the plaintiff, using all due care, attempted to drive his team off from the boat at the ferry slip in East Boston, but by reason of the defendants' negligence the drop of the slip projected so far above the deck of the boat that the sled struck suddenly and forcibly against the edge of the drop, and the load was thereupon thrown upon the plaintiff and crushed off one of his legs.

At the trial in this court, before *Hoar*, J., the plaintiff introduced evidence in support of the averments of his declaration and to show that the cause of the accident was of frequent and dangerous occurrence, well known to the defendants, and incident to the insufficiency of the apparatus and method employed by them for the safe passage of teams from their boat to the

slip. The defendants introduced rebutting evidence on these points. The plaintiff proved that a new kind of drop, called a supplemental or adjusted drop, which completely obviated the liability to such an accident, and the only objection to which was the cost, had been adopted and constantly used on the People's Ferry in East Boston for more than two years before the occurrence of this accident, with the defendants' knowledge; and he contended that the defendants ought to have adopted this new drop, and that their failure to do so constituted negligence, and made them liable for the injury to the plaintiff, if the accident was caused as alleged.

The judge stated the rule to the jury as given in *Warren* v. *Fitchburg Railroad*, 8 Allen, 233, and ruled that the defendants were bound to furnish reasonably safe and convenient means for the exit of teams from their boats, appropriate to the nature of their business; and that they were bound to exercise the utmost skill in the provision and application of the means so employed; but that they were not bound to adopt and use a new and improved method, because safer or better than the methods employed by them, if it was not requisite to the reasonable safety or convenience of passengers, and if the expense was excessive; and that the cost of such improved method might be a sufficient reason for their refusing to adopt it.

The plaintiff also contended that, all due care on his part and the occurrence of the accident alleged being proved, the law would imply negligence on the part of the defendants; and the burden of proof then rested on them to explain the cause and exculpate themselves. The judge declined so to rule, but instructed the jury that the burden of proof was upon the plaintiff to show that negligence of the defendants caused the injury of which he complained; that the burden of proof was upon the .laintiff to show that he was in the exercise of reasonable care, so that the injury was not, to any extent, caused by a want of reasonable care on his part; and that the fact, if proved, that the plaintiff was using reasonable care, and that an accident occurred, did not raise a presumption of law that the defendants were negligent, or require them to show that they were not, and

did not change the burden of proof; but that the jury might give it such weight as a fact and draw such inference from it as they should think necessary or reasonable, in view of the whole evidence; and, if they saw fit, might infer that the defendants were negligent.

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*G. H. Kingsbury,* for the plaintiff. The general rule of law is that common carriers of passengers are bound to carry securely, so far as human care and foresight can avail. *Ingalls* v. *Bills,* 9 Met. 1. *Edwards* v. *Lord,* 49 Maine, 279. *Derwort* v. *Loomer,* 21 Conn. 245. *Caldwell* v. *Murphy,* 1 Duer R. 241. This rule applies in its full strictness to ferrymen. 2 Kent Com. (6th ed.) 599. Angell on Carriers, §§ 82, 130, 537 *a.* Story on Bailm. § 496. If the modes employed by a carrier involve a notorious liability to a certain kind of accident, which is obviated by an approved method adopted by another carrier doing the same kind of business, he manifestly fails to bring himself within the requirements of law. He wilfully subjects his passengers to risks and injuries which he might avoid. The matter of cost is not an element in the question of his obligation, in such a case. Railroad companies are held bound to adopt all well known tests and improvements for the safety of passengers. *Seaver* v. *Boston & Maine Railroad,* 14 Gray, 466. *Cayzer* v. *Taylor,* 10 Gray, 274. *Hegeman* v. *Western Railroad,* 3 Kernan, 9. The reason of the rule applies with equal force to ferrymen.

Proof of due care on the part of the plaintiff, and of the occurrence of the accident, changed the burden of proof. *Ware* v. *Gay,* 11 Pick. 106. *McKinney* v. *Neil,* 1 McLean, 540. *Stokes* v. *Saltonstall,* 13 Pet. 181. *Hays* v. *Kennedy,* 3 Grant, (Penn.) 351. *Carpue* v. *London & Brighton Railway,* 5 Q. B. 747.

*G. A. Somerby,* for the defendants.

COLT, J. The claim of the plaintiff that the failure of the defendants to adopt the new supplemental or adjusted drop which had been adopted and used by another ferry company with the knowledge of the defendants, constituted negligence,

and made them liable for the plaintiff's injury, cannot be sustained, although it was proved that such new drop obviated all liability to the accident which caused his injury. The question of negligence was a question upon all the evidence for the jury, and we think it was submitted to them under full and accurate instructious.

A common carrier of passengers contracts in law that the kind of conveyance which he adopts shall be a reasonably safe and convenient mode of transportation, for its kind. The modes of conveyance in use by passenger carriers, both by land and water, vary as the exigencies of the traffic and its remunerative character require and justify. To require all carriers to adopt alike expensive provisions for the safety of passengers, without reference to the nature of their employment or the amount of their business, would be impracticable and absurd. It would be like requiring all the public highways in the Commonwealth to be kept in a like state of repair, without reference to the nature of the country through which they pass, or the amount of travel they accommodate. The different kinds of ferries in use vary from the rudest form of boat, drawn from shore to shore by ropes, propelled by oars or horse-power or the current of the stream, with landing-places on the banks, to those expensive steamboats which ply between populous districts, provided with every convenience of access from docks and ferry-houses. It cannot be necessary, in order to protect themselves from liability, that all these different ferrymen should adopt those appliances which can be shown to be the safest, and which others in the same occupation use. And yet the rule contended for by the plaintiff would require every ferryman, without regard to the nature or amount of his business, to use the most improved mode of securing the safety of passengers, regardless of expense, if thereby a liability to injury peculiar to the mode adopted by him could be avoided, either in the transportation or in the means provided for entrance upon or exit from his boat.

This whole matter of negligence is for the jury, and is and should be affected by the nature of the transportation which the carr'er has undertaken to afford, and the amount and character

of his business. If the means of transportation are adapted to the reasonably safe carriage of passengers upon that particular kind of conveyance, and he exercises the utmost skill in the use of such means, he has discharged his legal obligations.

The case of *Hegeman* v. *Western Railroad*, 3 Kernan, 9, cited by the plaintiff, was an action for an injury sustained by a passenger and caused by the breaking of an axle. There was evidence that a safety-beam, then in use on many other railroads, would secure safety in case of such an accident; and although this means of safety was adopted by carriers engaged in precisely the same kind of transportation with the defendants, yet the judge charged the jury that if they should be of opinion that a safety-beam was designed and calculated to prevent an injury to passengers in case of the breaking of an axle, it did not ne cessarily follow that the defendants were liable because they had not adopted it, but it would be for the jury to say whether the defendants were or were not negligent in informing themselves of the necessity and utility of the invention, and availing themselves of it.

The plaintiff further asked the court to rule that, having proved due care on his part, and the occurrence of the accident, the law would imply negligence on the part of the defendants, and cast upon them the burden of proving that the accident happened without their fault. We think such instruction would have been erroneous, as applied to the case as presented upon the pleadings and evidence. The declaration alleges that the negligence of the defendants consisted in not providing safe exit for the plaintiff with his loaded wagon from their ferry-boat, so that in attempting to pass off the boat the wheels of the wagon struck violently against the drop of the ferry, and threw the load upon the plaintiff, causing the injury complained of.

The general rule, that the plaintiff, in actions of this description, is bound to prove negligence on the part of the defendants as the cause of the injury, has been apparently modified in a class of cases in which it is said that proof of due care on the part of the plaintiff, with proof of the accident, is *prima facie* evidence of negligence on the part of the defendants. An

examination of these cases, we think, will show that there is in them no real invasion of the general rule as to the burden of proof. It will be found, we believe, in all of them that the nature of the accident was such, or the attending circumstances such, that proof of the accident alone raised a presumption of negligence, and that the same evidence which proved the injury done also proved the defendants' negligence, or developed circumstances from which it must be presumed. Thus in *Carpue* v. *London & Brighton Railway*, 5 Q. B. 747, where the injury was caused by a train running off the track and overturning the carriage in which the plaintiff was a passenger, Denman, C. J. told the jury that, " it having been shown that the exclusive management of the machinery and the railway was in the hands of the defendants, it was presumable that the accident arose from their want of care, unless they gave some explanation of the cause." So in *Stokes* v. *Saltonstall*, 13 Pet. 181, the injury was occasioned by the overturning of a stage coach; and in *Ware* v. *Gay*, 11 Pick. 106. the accident was of a similar nature, occasioned by the running off of the wheel of the coach in which the plaintiff was a passenger. In these cases clearly the nature of the accident afforded proof of the defendants' negligence.

The plaintiff, in proving his injury, must ordinarily prove the nature of the accident and the circumstances ; and when such proof has any tendency to prove negligence, and especially when the defendant has exclusively the means of knowledge within his control, as to what caused the injury, it is said the burden is cast upon the defendant to explain the cause, and exculpate himself. ·

Upon recurring to the facts in this case, it appears that this accident might have happened without negligence on the part of the defendants, and that the means of knowledge as to the cause of the injury were equally within the reach of both parties. The court therefore rightly declined to give the instructions asked for upon this point, and for the reasons stated the instructions which were given were sufficiently favorable to the plaintiff. *Exceptions overruled.*