CHARLOTTE B. MILLER, Respondent, *v.* THE OCEAN STEAMSHIP COMPANY OF SAVANNAH, Appellants.

| 118 | 199 |
| 153 | 271 |

In an action against defendant, a common carrier of passengers, to recover damages received by plaintiff, while a passenger upon one of its boats, it appeared that the injuries were caused by a break in apparatus wholly under defendants control, furnished and applied by it to secure in place a hawser used in turning the vessel around before landing,

at a point where there was danger of serious injury to passengers if the apparatus gave way and the hawser recoiled. *Held*; that defendants' duty to its passengers was such as to require, under the circumstances, more than ordinary diligence for their protection; that the giving way of the apparatus raised an inference of negligence, and required evidence that the injury resulting came from no want of diligence on defendants' part. Also, *held,* the mere fact that the defective condition was not observed or apparent was not sufficient to effectually dispel the inference, if there were means available by careful examination or practical tests to discover the defect, that the requirements of the higher degree of care in such case is not necessarily dependent upon actual apprehension of danger, but on the dangerous consequences which are likely to result from defective appliances.

Also, *held*; that the failure of defendant's officers and employees having charge of the vessel to give timely warning to the passengers to enable them to avoid danger, which might have been anticipated, could be considered on the question of defendants negligence; it appearing that it was their custom to give such warning when a hawser was being used as on the occasion in question.

*Kelly* v. *M. R. Co.* (112 N Y. 443), distinguished.

The injury was caused by the breaking of a stick used to hold a pulley-block through which the hawser passed. Plaintiff was allowed to prove under objections and exceptions that immediately after the accident the place of the stick was effectually supplied by one of the capstan bars which were near, and that the vessel was warped around to the dock. *Held,* no error.

(Argued December 2, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 2, 1887, which affirmed a judgment in favor of the plaintiff, entered upon a verdict.

The nature of the action and the facts are sufficiently stated in the opinion.

*Nathan Bijur* for appellant. It was error to deny the motions to dismiss the complaint made by the defendant after the close of the plaintiff's case, and also after all the testimony was in. (*Breen* v. *N. Y. C. & H. R. R. R. Co.*, 109 N. Y. 297; *Lafflin* v. *B. & S. M. R. R. Co.*, 106 id. 136; *Kelly* v. *M. R. R. Co.*, 112 id. 443.) The court erred in admitting evidence that the capstan bars were used after the accident

had occurred. (*Baird* v. *Daly*, 68 N. Y. 547; *Timpson* v. *M. R. R. Co.*, 1 N. Y. Supl. 674.)

*Lucien Birdseye*, for respondent.    The motion to dismiss the complaint, made at the close of plaintiff's case, was properly denied. (*Colgrove* v. *N. Y. & N. H. R. R. Co.*, 20 N. Y. 492; *Sheridan* v. *B. C. & N. R. R. Co.*, 36 id. 39; *Deyo* v. *N. Y. C. R. R. Co.*, 34 id. 9; *Kennedy* v. *Mayor, etc.*, 73 id. 365, 366–7; *Putnam* v. *B. & S. A. R. R. Co.*, 55 id. 108, 112; *Thompson* v. *Lamley*, 1 Abb. [N. C.] 254; 64 N. Y. 631; *Heyne* v. *Blair*, 62 id. 19, 22–3; *Matteson* v. *N. Y. C. R. R. Co.*, 62 Barb. 364, 377–8; *Ireland* v. *O. H. & S. P. Co.*, 13 N. Y. 526, 533; *Ernst* v. *H. R. R. R. Co.*, 35 id. 9, 38–41; *Brown* v. *N. Y. C. R. R. Co.*, 34 id. 404; *Wolfkield* v. *S. A. R. R. Co.*, 38 id. 49; *Hume* v. *Mayor, etc.*, 47 id. 639; *Laning* v. *N. Y. C. R. R. Co.*, 49 id. 521, 524; *Viner* v. *N. Y., etc., SS. Co.*, 50 id. 23–26; *Totten* v. *Phipps*, 52 id. 354; *Webber* v. *N. Y. C. R. R. Co.* 58 id. 451; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Sewell* v. *City of Cohoes*, 75 id. 45–53; *Casey* v. *N. Y. C. R. R. Co.*, 78 id. 518, 521–2; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 464, 469; *Hart* v. *H. R. B. Co.*, 80 id. 622; *Payne* v. *T. & B. R. R. Co.*, 83 id. 572; *Harris* v. *Perry*, 89 id. 308, 311–2; *Kain* v. *Smith*, 89 id. 375, 384–5; *Holbrook* v. *U. & S. R. R. Co.*, 16 Barb. 113; 12 N. Y. 236; *Curtis* v. *R. & S. R. R. Co.*, 20 id. 282; 18 id. 534; *Bowen* v. *N. Y. C. R. R. Co.*, 18 id. 408; *Hegeman* v. *W. R. R. Co.*, 13 id. 9, 24; *Alden* v. *N. Y. C. R. R. Co.*, 26 id. 102; *Steinweg* v. *Erie R. Co.*, 43 id. 123; *Caldwell* v. *N. J. S. Co.*, 47 id. 282, 285, 288–290; *Brown* v. *N. Y. C. R. R. Co.*, 34 id. 404; *Maverick* v. *E. A. R. R. Co.*, 36 id. 378; *Simmons* v. *N. B. S. Co.*, 97 Mass. 361, 367–8; *P. & R. R. R. Co.* v. *Derby*, 14 How. [U. S.] 468, 486; *S. B. New World* v. *King*, 16 id. 469, 474; *Railroad* v. *Pollard*, 22 Wall. 341, 350; *P. Co.* v. *Roy*, 102 U. S. 451; The City of Panama, 101 id. 453, 462–3; *Hall* v. *C. R. S. B. Co.*, 13 Conn. 319; *Dudley* v. *Smith*, 1 Camp. 167; *Maury* v. *Talmadge*, 2 McLean, 157; *Stokes* v. *Saltonstall*, 13 Pets. 181,

192; *Daniel* v. *M. R. Co.* L. R., [3 C. P.] 216, 591; *Christie* v. *Griggs*, 2 Camp. 79; *Farish* v. *Reigle*, 11 Gratt. 697; *Boyce* v. *C. S. Co.*, 25 Cal. 460, 467–9; *Holbrook* v. *U. & S. R. R. Co.*, 12 N. Y. 242; *Curtis* v. *R. & S. R. R. Co.*, 18 N. Y. 536; *Hart* v. *H. R. B. Co.*, 80 id. 622; *Dawson* v *M. & R. Co.*, 5 L. T. [N. S.] 682; *Ware* v. *Gray*, 11 Pick. 106; *Christie* v. *Griggs*, 2 Camp. 79; *Stokes* v. *Saltonstall*, 13 Pets. 181; *McKinney* v. *Keil*, 1 McLean, 540; *Farish* v. *Reigle*, 11 Gratt. 697; *Stockton* v. *Frey*, 4 Gill 406; *Fairchild* v. *C. S. Co.*, 13 Cal. 599; *Boyce* v. *C. S. Co.*, 25 id. 460; *C. B. & Q. R. Co.* v. *George*, 19 Ill. 510, 517–8; *Yonge* v. *Kinney*, 28 Ga. 111; *Brown* v. *N. Y. C. R. R. Co.*, 34 N. Y. 404; *Sullivan* v. *P. & R. R. Co.*, 30 Pa. St. 234; *Wilkie* v. *Bolster*, 3 E. D. Smith 327; *Byrne* v. *Boadle*, 2 H. & C. 722; *Scott L. & D. Co.*, 3 id. 596; *Kearney* v. *L. etc., R. R. Co.*, L. R. [5 Q. B.] 411; L. R. [6 Q. B.] 759; *Lyons* v. *Rosenthal*, 11 Hun. 46; *Mullen* v. *St. John*, 57 N. Y. 567; *Payne* v. *T. & D. R. R. Co.*, 83 id. 572; *Hegeman* v. *W. R. R. Co.*, 13 id. 9; *Alden* v. *N. Y. C. R. R. Co.*, 26 id. 102; *Sharp* v. *Grey*, 9 Bing. 457; *Caldwell* v. *N. J. S. Co.*, 47 N. Y. 282, 287.)    The motion made when both parties had rested, to dismiss the complaint, or direct a verdict in favor of defendant, was properly denied. (*Weaver* v. *Ward*, Hob. 134; Moore, 864; 2 Rolle Abr. 548; Whart. on Neg., §§ 114, 127, 128; S. R. on Neg., §§ 5, 59; *Center* v. *Finney*, 17 Barb. 94; *Lewis* v. *Smith*, 107 Mass. 334.)    Plaintiff was not chargeable with contributory negligence.    (*Johnson* v. *H. R. R. R. Co.*, 5 Duer, 21, 25, 6 id. 633, 641; 20 N. Y. 65; *Hackford* v. *N. Y. C. R. R. Co.*, 6 Lan. 381, 385–6; *Robinson* v. *U. P. R. R. Co.*, 48 Cal. 409, 426; *McQuilken* v. *C. P. R. R. Co.*, 50 id. 7; *P. C. Co.* v. *Bentley*, 66 Pa. St. 30; *Weiss* v. *P. R. R. Co.*, 79 id. 387; *Smoot* v. *Wetumka*, 24 Ala. 112; *Cockle* v. *L. & S. E. R. Co.*, L. R. [7 C. P.] 321; *Bridges* v. *N. E. R. Co.*, L. R. [7 H. L.] 213; *Robson* v. *N. E. R. Co.*, L. R. [10 Q. B.] 271; *Rose* v. *N. E. R. Co.*, L. R. [2 Eq. Div.] 248; *Matteson* v. *N. Y. C. R. R. Co.*, 62 Barb. 364; *Cleveland* v. *N. J. S. Co.*, 68 N. Y. 306, 309; *Stackus* v. *N. Y. C.*

& *H. R. R. R. Co.*, 79 id. 464; *Ernst* v. *H. R. R. R. Co.*, 35 id. 26.)   Proof of facts and transactions subsequent to the injury was proper.   (*Waldele* v. *N. Y. C. & H. R. R. R. Co.*, 95 N. Y. 275; *Martin* v. *N. Y., N. H. & H. R. R. Co.*, 103 id. 626; *Rex* v. *Eriswell*, 3 Term R. 707; *Ellicot* v. *Pearl*, 10 Pet. 412, 432,; *Ins. Co.* v. *Mosely*, 8 Wall. 397, 403–9, 409–419; *Packet Co.* v. *Clough*, 20 id. 528, 540–1; *V. & M. R. R. Co.* v. *O'Brien*, 119 U. S. 99; *Lund* v. *Tyngsborough*, 9 Cush. 36; *Durkee* v. *C. P. R. R. Co.*, 68 Cal. 533; 58 Am. R. 563, 565–8; *Dale* v. *D., L. & W. R. R. Co.*, 73 N. Y. 468, 472; *Brehm* v. *G. W. R. Co.*, 34 Barb. 256, 260–261; *Dougan* v. *C. T. Co.*, 56 N. Y. 8; *Salters* v. *D. & H. C. Co.*, 3 Hun, 338, 341; *King* v. *N. Y. C. R. R. Co.*, 4 id. 769, 776; *Payne* v. *T. & B. R. R. Co.* 11 id. 626; 75 N. Y. 45; *Hipsley* v. *K. C. S. J. & C. B. R. R. Co.*, 88 Mo. 348; *Baird* v. *Daly*, 68 N. Y. 548; *Corcoran* v. *The Village of Peekskill*, 108 id. 151; *Harvey* v. *N. Y. C. & H. R. R. R. Co.*, 19 Hun, 556, 558; *Painton* v. *N. Y. C. R. R. Co.*, 83 N. Y. 7; *Baldwin* v. *N. Y. & H. R. R. Co.*, 4 Daly, 314; *Hayman* v. *H. L. etc. Co.*, 58 N. Y. 53; *Casey* v. *N. Y. C. & H. R. R. R. Co.* 8 Daly 220; *Searles* v. *M. E. R. R. Co.*, 17 J. & S. 425; *Sheldon* v. *H. R. R. R. Co.*, 14 N. Y. 218; *Field* v. *N. Y. C. R. R. Co.*, 32 id. 339; *Westfall* v. *E. R. Co.*, 5 Hun, 76; *P. R. R. Co.* v. *Henderson*, 51 Pa. St. 315; *W. C. & P. R. R. Co.* v. *McElwee*, 67 id. 311, 314; *McKee* v. *Bidwell*, 74 id. 218, 225; *S. L. & S. F. R. R. Co.* v. *Weaver*, 35 Kas. 412; *A. T. & S. F. R. Co.* v. *Retford*, 18 Kas. 448–9; *City of Emporia* v. *Schmidling*, 33 id 485; *Martin* v. *Towle*, 59 N. H. 31; *Nalley* v. *H. C. Co.* 51 Conn. 524; *Buel* v. *N. Y. C. R. R. Co.*, 31 N. Y. 314; *Twomley* v. *C. P. N. & E. R. R. Co.*, 69 id. 158; *Lubey* v. *H. R. R. R. Co.*, 17 id. 131; *Corcoran* v. *Village of Peekskill*, 108 id. 151; *Ernst* v. *H. R. R. R. Co.*, 39 id. 61; *Beisiegel* v. *N. Y. C. R. R. Co.*, 40 id. 9; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 63 id. 522; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 8 Daly, 220; 6 Abb. [N. C.] 104; 78 N. Y. 518; *Sewell* v. *City of Cohoes*, 75 id. 45, 54; 1 Greenl. on Ev. chap. 5, § 113; Story on Agency, §§ 134,

135, 136, 137, 138; *Fairlee* v. *Hastings*, 10 Ves. 122, 126–9; *Garth* v. *Howard*, 8 Bing. 451; *Thallheimer* v. *Brinckerhoff*, 4 Wend. 394, 397; *Bank of Monroe* v. *Field*, 2 Hill, 445; *Barker* v. *Binninger*, 14 N. Y. 271; *Luby* v. *H. R. R. R. Co.*, 17 id. 131; *Whittaker* v. *E. A. R. R. Co.*, 51 id. 295; *Anderson* v. *R., W. & O. R. R. Co.*, 54 id. 334; *Packet Co.* v. *Clough*, 20 Wall. 528; *Hamilton* v. *N. Y. C. R. R. Co.*, 51 N. Y. 109; *Card* v. *N. Y. & H. R. R. Co.*, 50 Barb. 39; *Maury* v. *Talmage*, 2 McLean, 157, 159, 160.) The court properly refused all the defendant's requests to charge, which were refused. (*Carpenter* v. *Stillwell*, 11 N. Y. 61, 79; *Caldwell* v. *Murphy*, 11 id. 416; *Oldfield* v. *N. Y. & H. R. R. Co.*, 14 id. 310, 315; *Keller* v. *N. Y. C. R. R. Co.*, 2 Abb. Ct. App. Dec. 481, 489; *Jones* v. *Osgood*, 6 N. Y. 233; *Hunt* v. *Maybee*, 7 id. 266, 273; *Winchell* v. *Hicks*, 18 id. 558, 565; *Gardner* v. *Barden*, 34 id. 433, 437; *Manertik* v. *E. A. R R. Co.*, 34 id. 378, 382, 383; *Willetts* v. *S. M. Ins. Co.*, 45 id. 45, 49; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 47, 55; *Ransom* v. *N. Y. & E. R. R. Co.*, 15 id. 415; *Matteson* v *N. Y. C. R. R. Co.*, 62 Barb. 364, 379; *Dyke* v. *E. R. Co.*, 45 N. Y. 113, 118; *Curtis* v. *R. & S. R. R. Co.*, 20 Barb. 282, 284; *Morse* v. *A. & S. R. R. Co.*, 10 id. 621; *Brignoli* v. *C. & G. E. R. R. Co.*, 4 Daly, 182; *Metcalf* v. *Baker*, 57 N. Y. 662; *Sheehan* v. *Edgar*, 58 id. 631; *Lincoln* v. *S. & S. R. R. Co.*, 23 Wind. 424; *Caldwell* v. *Murphy*, 1 Duer, 233; 11 N. Y. 46; *Foote* v. *Tracy*, 1 Johns. 53; *Aaron* v. *S. A. R. R. Co.*, 2 Daly, 127; *Minick* v. *City of Troy*, 19 Hun, 253; *Whelan* v. *N. Y., L. E. & W. R. R. Co.*, 38 Fed. Rep. 15; *Matteson* v. *N. Y. C. R. R. Co.*, 62 Barb. 364, 379–380; *Scott* v. *L. etc., D. Co.*, 3 H. & C. 596, 598; *Holbrook* v. *N. S. R. R. Co.*, 16 Barb. 113, 118; 12 N. Y. 236, 244; *Ernst* v. *H. R. R. R. Co.*, 35 id. 26; *Ochsenbein* v. *Shapley*, 85 id. 225; *Cleveland* v. *N. J. S. Co.*, 68 id. 309.) But even if there had been any single proposition contained in all these twenty-five requests to charge, as to which there was some technical error; still the judgment will not be reversed by reason thereof, because the charge, as a whole, and the eleven

propositions charged in accordance with defendant's requests,
presented the case as fully and completely and favorably on
behalf of the defendants as ought to have been done. (*Cald-
well* v. *N. J. S. Co.*, 47 N. Y. 282.) There was no error in
admitting or rejecting any of the evidence pointed out by any
of the defendant's objections and exceptions to evidence.
(*Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 133;
*McKeever* v. *N. Y. C. & H. R. R. R. Co.*, 88 id. 667.)
The question of the excessiveness of plaintiff's damages is not
open for discussion in this court. (Code Civ. Proc. § 190,
subd. 2; *Oldfield* v. *N. Y. & H. R. R. Co.*, 14 N. Y. 310,
319; *Metcalf* v. *Baker*, 57 id. 662; *Peck* v. *N. Y. C. & H.
R. R. R. Co.*, 70 id. 587, 592; *Gale* v. *N. Y. C. & H. R. R.
R. Co.*, 76 id. 594; *S. Oil Co.* v. *A. Ins. Co.*, 79 id. 506, 510;
*Kiff* v. *Youmans*, 86 id. 324, 327.)

BRADLEY, J. The action was brought to recover damages
resulting from personal injuries suffered by the plaintiff, and
alleged to have been occasioned by the negligence of the defend-
ant. The latter was a corporation of the state of Georgia, and,
as a common carrier of passengers, was the proprietor of and
engaged in running a steamship, known as the City of Savannah,
between the cities of New York and Savannah.

On March 10th, 1885, the plaintiff took passage at New York,
for Savannah, on that vessel, which arrived at the latter place
on the morning of the thirteenth of that month. The plain-
tiff was on the hurricane deck with several other passengers.
A line was thrown out from the bow and secured to the wharf,
with a view to turn the vessel around before landing. This
was usual, and to accomplish it the flood tide in the Savannah
river was relied upon, but when the vessel had turned so as to
be about at right angles with the landing, her further progress
in turning was interrupted by slack tide. The hawser was then
brought into requisition to force her around, and for that pur-
pose it was secured at the proper place on the dock, taken
through the stern chock, and then carried along on the hurricane
deck to the capstan on the bow, operated by an engine beneath

the deck, and to prevent the hawser coming in contact with the pilot-house, cabins, and other structures on the deck, it was necessary to guy the hawser away from them.    This was done by putting it through a pulley-block with a loop in the starboard bow chock, held there by a toggle on the outside.    The hawser thus placed ran along from the stern on the deck, near that side, to an through the block, and at little more than at right angles from there to the capstan, which was put in motion, and the force applied was such that the toggle suddenly gave way, and the hawser sprang forcibly back into line between its entrance at the stern and the capstan.    The plaintiff was struck by it, knocked down, and the bones of one of her legs broken. This was not caused by any fault in the construction of the ship.    It was well made, staunch, and fully manned.    The defect which caused the calamity was in the character, substance, or condition of the toggle put into the loop to hold the block, through which the line passed, to its place ; or, in the manner in which the toggle was put into the loop. The burden was with the plaintiff to prove negligence on the part of the defendant.    In view of the danger of serious injury to passengers on the deck, which might result from failure to properly secure the hawser, with the strain upon it, to its place, the fact, when and as it appeared, that the accident was caused wholly by the defective condition of the means employed by the defendant and under its control, was sufficient to raise the presumption or inference of negligence on its part, and to call upon the defendant for explanation by evidence showing that the cause of the injury was consistent with the faithful discharge of its duty to those whose safety as passengers was intrusted to the care and diligence of the defendant's employees engaged in operating the vessel.    (*Holbrook* v. *Utica & Schenectady R. R. Co.*, 12 N. Y. 236 ; *Hegeman* v. *Western R. R. Co.*, 13 id. 9 ; *Bowen* v. *N. Y. C. R. R. Co.*, 18 id. 408 ; *Caldwell* v. *N. J. Steamboat Co.*, 47 id. 282.)    This the defendant sought to do, and gave evidence to the effect that, when it was found necessary to use the force applicable to the capstan on the bow to warp

the vessel around to the dock, the quartermaster was directed by the mate to go below and get a toggle; that he went into the hold of the vessel and there got, brought up, and used for the purpose, a stick of wood. Assuming that it was broken by the strain upon it, which the evidence tends to prove, it evidently was defective, but in what particular does not appear, because it fell into the water and was not recovered, nor was any effort made to recover it. There was, at the trial, another stick produced, which was by the quartermaster said to be similar in size and appearance to the one used, and in respect to that, expert evidence was given that it was sufficient in size and strength to sustain, as a toggle, the strain to which the other was or could have been subjected by the power applied, or applicable, to the capstan.

The defective stick used was taken from some wood in the hold used as dunnage, and how long it had remained there as dunnage does not appear, or whether for such use it had lain in water in the hold of the ship the evidence does not disclose other than by inference. The place there, where the stick was selected and from which it was taken, was not well lighted at the time, and it was just at daylight in the morning when it was brought out and used. There does not appear to have been any test applied to ascertain its condition, or inherent strength, but the information relied upon in that respect was dependent solely upon the appearance it furnished to the observation of the acting quartermaster, who obtained and used it for the purpose to which it was applied. He says it was Georgia pine, and he thought it sufficient for the toggle when he picked it out in the hold; and, that his opinion was the same after he brought it on deck. He also testified that he had seen toggles used a large number of times to haul vessels along the dock, but had before seen none used to warp a vessel around to the dock, as was done in this instance. It appeared that there were eyebolts about the vessel, and near the place of this bow chock, and into which the block may have been securely hooked, but it appears that the method of using a toggle was frequently adopted for the purpose of moving vessels

at their docks by force applied to lines or hawsers.   And it may be assumed that such means were ordinary and therefore approved as suitable.   It is in view of that fact, contended by the defendant's counsel, that upon the evidence there was no opportunity to find that the defendant was chargeable with negligence.   The evidence as to the appearance of the stick used was mainly dependent upon the testimony of the quarter-master, who procured and applied it, although the mate saw it when it was brought on to the deck and placed in the loop. The other evidence on the subject was mostly secondary in character, and had relation to the stick produced upon the trial and said to be similiar in appearance to the one used.   That evidence was not necessarily descriptive of the condition of the latter, nor was the conclusion required that an examination of the sample disclosed what may have appeared by a close inspection of that which proved to be insufficient.   It cannot be assumed that the quartermaster did not act in good faith in his attempt and purpose to supply a toggle of adequate strength to bear the strain which would be put upon it, but his relation to the transaction as the employe of the defendant was such as to bear somewhat, for the consideration of the jury, upon the question of his credibility.   (*Dean* v.  *VanNostran*, 23 Wkly. Dig. 97.) Although the stick used was defective and unsuitable for the purpose, there would, upon the evidence, have been difficulty in charging the defendant with negligence, if its duty required the exercise of ordinary care only, because it did not appear affirmatively by the evidence that the defect, or want of strength for the use to which it was applied, was apparent to observation, but the recognized fact that danger of serious injury to the passengers on the portion of the deck, within the recoil of the hawser, likely to or which might result from it if it should break away from the guy, was such as to impose upon the defendant the duty to exercise something more than ordinary diligence for their protection.   The cause of the injury arose from the apparatus wholly under the control of the defendant and furnished and applied by it.   In such case the duty of the common carrier to its passengers is such as to raise the

inference of negligence, the relief from the imputation of which requires evidence that the injury resulting to them came from no want of diligence on the part of the carrier. And the mere fact that the defective condition was not observed or apparent, may not be sufficient to effectually dispel the inference, if there were means available by careful examination or practical tests to discover the cause of the infirmity in the defective appliance. (*Breen* v. *N. Y. C. & H. R. R. R. Co.*, 109 N. Y. 297.) Also see cases before cited.

It does not appear that force had ever before on this vessel been applied in the manner that it was on this occasion, or for the purpose of warping her around to the wharf. The vessel was two hundred and seventy feet in length, and her tonnage exceeded two thousand tons. With a slack tide and the tendency of the current down the river, it may be seen that great force was requisite to suddenly turn the ship by means of the line making the angles on its way from the dock to the capstan, that this one did when the power of the capstan engine was applied. It was apparent that very great strain would come upon the toggle. And it would be no answer if such were so, that the requisite strength of the appliance was not appreciated for the accomplishment of its purpose. Nor would it necessarily be sufficient for the party intrusted with its provision to say he thought it had the necessary firmness and tenacity to sustain what it would be required to bear. If such speculation were, as matter of law, sufficient to repel the permissible inference of negligence, responsibility might be quite easily avoided. There was no necessity for experiment on the occasion in question. Adequate means were at hand, sticks which may have been safely assumed to have the requisite strength for the toggle, and so far as appears, one of the eyebolts on the ship may have been effectually and safely used to hold the block. In view of the entire evidence upon the subject, the conclusion was permitted that the defendant failed to exercise the care and diligence fairly required of it; and that the injury to the plaintiff was occasioned by its negligence. This, upon the evidence, was

a question of fact properly submitted to the jury. The conclusion that the plaintiff was free from contributory negligence, was clearly warranted by the evidence. She was a cabin passenger, and entitled to access to any part of the ship suitable for passengers to go. The upper deck was usually made available to them. On this occasion, as the vessel was approaching the dock at Savannah, several passengers went upon this deck and were there at the time of the injury. It appears that the officers of the vessel, appreciating the danger which might result from the breaking away or severance of a line or hawser, when used on the deck to bring the vessel to the wharf, usually directed passengers to get and remain away from the place of such danger. There is evidence tending to prove that after the capstan was put in motion on this occasion an order was given by the captain, or master, to the mate to cause the passengers exposed to the danger, to move away from it, but before the order was executed the injury occurred. And by the evidence of the passengers, including the plaintiff, who testified on the subject, it appeared that no order or direction was heard in that respect. Nor can it be said, as matter of law, that the plaintiff was supposed or required, under the circumstances, to know or observe any danger of her situation in reference to the cause which produced the injury, or from any cause which the means employed in the use made of the hawser might furnish. The failure of the officers and employees having charge of the vessel to give timely warning to the passengers, to enable them to avoid the danger, may also have been entitled to some consideration on the question of negligence of the defendant. This usual precaution may and should have been observed and executed by those having the movement of the vessel in charge. The motions to dismiss the complaint were properly denied by the trial court.

Of the numerous requests to charge made by the defendant's counsel, only one, which the court refused, seems to be relied upon by him on this review. The one of the two propositions in that request, was, that "the vigilance and caution to be exercised in avoiding disaster should not necessarily be com-

mensurate with the danger that is imminent, but with the danger that is apprehended; and the necessity of circumspection is qualified by the absence of those indications of peril which either precede or attend the approaches of harm." In the other proposition of the same request instruction was asked, that in determining whether the defendant was negligent the jury should inquire whether the accident was one which the men in charge of the vessel had any reason to apprehend, and for that purpose it was competent to consider that the evidence showed that the defendant had repeatedly, before the time in question, "performed in the very same manner, the very same operation during which this accident occurred, without accident or injury." The part here last stated of the proposition was not supported by evidence appearing in the record. It does not appear that ever before, the method and means adopted and applied in this instance were on this vessel used to warp her around to the dock, or that the hawser had before upon this vessel been placed on the deck supported by a guy and operated by the bow capstan for any purpose as was attempted to be done at this time. The court for that reason could not properly have charged fully as requested.

But the evident purpose of the request had relation to the degree of care imposed upon the defendant. The requirement of the higher degree of care is not necessarily dependent upon actual apprehension of danger, but upon the dangerous consequences which are likely to result from a defective condition of machinery and appliances where persons are so situated as to enable them to rely for protection upon the diligence of those having the control and operation of the means employed. This is especially applicable to common carriers of passengers, although injuries may result from causes from which danger may not be apprehended, if due care be observed by the passenger. In the latter case the carrier would be held responsible for the want of ordinary care only. Such was the case of *Kelly* v. *Manhattan R. Co.* (112 N. Y. 443) and some other cases cited by the defendant's counsel. But in the present case it appears that danger of possible injury was apprehended

by those charged with the responsibility of the management of the vessel; and that there was cause for the apprehension of serious injury to passengers exposed to the danger, in the event that the hawser or its restraining appliances should yield and give way to the force applied to accomplish the purpose in view, was demonstrated by the result. The exception to such refusal to charge was not well taken.

It was not error to submit to the jury the question whether it was carelessness on the part of the defendant in placing the toggle in such position that it fell out or through the loop into the water, if they found that it was so placed. The view of the court evidently was, as appears by the charge, that the toggle was broken by the strain upon it, but there was some evidence from which it might be inferred that it was put perpendicularly into the loop, while the weight of evidence was that it was inserted horizontally. The portion of the charge excepted to had relation to the evidence that it was perpendicularly placed into the strap, and in that view the circumstances were such as to permit the submission to the jury of the question that was submitted to them in that respect. Immediately after the toggle gave way one of the capstan bars was effectually used to supply its place and the ship warped around to the dock. The defendant's exception was to the evidence that the bar was made use of for a toggle. Those bars were near the bow capstan on the deck, they were ash timber and apparently, and in fact, of adequate strength for the toggle. The use of the bar was in the transaction of bringing the vessel to the dock continued. Its use proved that this might be accomplished in that manner by existing adequate means. This did not come within the rule which excludes evidence of subsequent change of conditions to obviate what might be regarded as a recurrence of that which may have happened on a prior occasion. It was an efficient supply of the demand required at the time to accomplish that which was then in progress. And the reception of the evidence was not error.

The other exceptions to which attention has been called by the learned counsel for the defendant, have been carefully

considered and none of them seem to point to error in the rulings of the court.

The judgment should be affirmed.

All concur, except POTTER, J., not sitting.

Judgment affirmed.