### LEE LINE STEAMERS v. ROBINSON.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1914.)

#### No. 2481.

1. PLEADING (§ 90*)—PLEA—GENERAL ISSUE AND OTHER DEFENSES.

The rule that, where the law authorizes a defendant to set up several pleas, he may use each plea in his defense, and the admissions unavoidably contained in one cannot be used against him in another, applies only where the defenses so made are inconsistent. Where they are consistent, as where a plea of the general issue is coupled with another defense explanatory thereof, the rule does not apply.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 184, 185, 187, 190, 194; Dec. Dig. § 90.*]

2. CARRIERS (§ 316*)—ACTION FOR INJURY TO PASSENGER—BURDEN OF PROOF.

Evidence that a passenger on a steamboat was stabbed by an employé of the boat, who was at the time with other employés at a place where they had been called in the performance of their duties, was sufficient to raise a presumption of negligence on the part of the carrier, and place upon it the burden of proving a plea that the employé acted in self-defense.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1261, 1262, 1283, 1285–1294; Dec. Dig. § 316.*]

3. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE—ACTION FOR INJURY TO PASSENGER.

Instructions given by the court, in an action against a carrier by water for injury to a passenger from an assault by an employé of the boat, considered and, taken together, *held* free from error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by Will Robinson against the Lee Line Steamers. Judgment for plaintiff, and defendant brings error. Affirmed.

W. D. Kyser, of Memphis, Tenn., for plaintiff in error.

L. B. Phillips, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. It is sought to reverse a judgment entered in the court below upon a verdict rendered in favor of Robinson; and we shall refer to him as plaintiff, and to the Lee Line Steamers, a corporation, as defendant. The declaration is a simple narrative, contained in a single count, alleging in substance that defendant owns and operates the steamboat Rees Lee on the Mississippi river between Cairo and Memphis, and is engaged in the transportation of freight and passengers for hire; that on September 25, 1912, plaintiff was a passenger on this boat, going from Cairo, Ill., to Bessie, Tenn.; that in the course of the trip, and as the boat was approaching Hickman, Ky., while plaintiff was demeaning himself in a proper manner, he was negligently, wrongfully, willfully, and maliciously assaulted with a knife, or some sharp weapon or instrument, by one of the employés of defendant, whereby he was permanently injured; and that this employé was a "dangerous and violent man," of which defendant had knowledge at the time of his employment.

Defendant first filed a plea of not guilty, and later introduced a plea of justification, to the effect that the assault complained of was made by its employé in self-defense; that at the time of the trouble plaintiff was advancing toward the employé "in such a threatening manner as to lead a reasonably prudent man to believe that the force used by him was necessary, in self-defense; and that plaintiff was the aggressor" and the "difficulty was a personal altercation" between plaintiff and the employé. Plaintiff joined issue on this plea.

Unless the two pleas must be regarded as inconsistent, a question we consider later, then under the pleadings alone plaintiff was a passenger on defendant's boat and was there injured by defendant's employé. Plaintiff and this employé, one Tillman, are colored men, and (according to the evidence) a place on the boat, called the "monkey deck," was set apart for colored passengers; and the freight deck was assigned to such employés as Tillman, called "roustabouts."

The theory of the case as presented by plaintiff at the trial was, in material part, that Tillman was a dangerous and violent man, and defendant knew this at the time it employed him; that the monkey deck was overcrowded, and in consequence many of the colored passengers were compelled and permitted to seek accommodations on the freight deck, and, while plaintiff was standing in the gangway (about four feet in width) of the freight deck, Tillman and other roustabouts were called by their superior to gather freight for discharge at Hickman; that Tillman in abusive language and with a vile epithet ordered plain-

tiff out of the gangway, but, plaintiff not heeding the order or moving as quickly as Tillman thought he should, Tillman without cause stabbed plaintiff in the abdomen and so seriously and permanently injured him.

The theory of the defense presented at the trial in substance was that Tillman is a quiet and inoffensive man, and he with plaintiff and others were engaged in a game of craps on the monkey deck, when Tillman was called to the freight deck to get the freight ready for Hickman; that, Tillman having won most of the money and started to the freight deck, plaintiff with a knife in his hand followed him to the gangway of the deck and abused and threatened him, and finally struck Tillman on the head with a piece of wood, whereupon, as Tillman testified, "I cut him to keep him from cutting me."

The evidence offered in support and denial of these theories was conflicting, and the contention for reversal is limited to claims of material errors committed in the course of the trial and in the charge of the court. The first assignment presented is that the charge erroneously placed the burden of proof upon the defendant. Defendant relies on this portion of the charge:

"When the plaintiff has proven that he was a passenger on the boat and that he was injured, that makes a prima facie case, and he is entitled to a verdict, unless the defendant proves by the greater weight of the evidence that the injury which he sustained was not caused by its negligence or want of care."

This must, of course, be read in connection with the whole charge; and it must be construed, also, with reference to the evidence. Caldwell v. New Jersey Steamboat Co., 47 N. Y. 282, 289. This language is immediately preceded by the statement, of which no complaint is made, that "cases of passengers against carriers are not controlled by the same rules as in cases of suits against carriers for damage to property," and is directly followed by a statement, which is undoubtedly true, that "it is undisputed in this case that the plaintiff was a passenger, and that while a passenger he was disemboweled by a knife in the hands of the servant of defendant company." Then the question is put whether defendant has "shown by a preponderance of the evidence that it was not liable for the injury," and thereupon the charge proceeds at length to state the issues and to instruct the jury how rightly to consider and apply the testimony touching the various aspects of each of the theories upon which it was offered.

For example, the first issue so treated was the one involving the duty of defendant respecting the employment of such servants (manifestly roustabouts) as it placed on board and brought into direct contact with passengers. No complaint is made of the rule of law stated in respect of that issue, nor of the mode of submitting to the jury the facts claimed by each party, which would, on the one hand, render the company liable, and, on the other, relieve it of liability; and so the charge continues step by step to the end though some features other than the question of burden of proof are said to be erroneous, and we shall as far as necessary consider those features presently.

Before doing so, we should add that plaintiff in opening his testi-

mony did not content himself with proving that while a passenger he was injured by defendant's servant, with a view of offering the rest of his testimony by way of rebuttal. Plaintiff offered all his testimony relating to the circumstances attending the injury; and while it is not claimed that we should weigh this evidence, it may properly be said that it is substantial and persuasive. Indeed, without questioning its prima facie effect, defendant endeavored to meet the merits of the case so made by producing its testimony. It is not pretended that the defendant was entitled to an instructed verdict, at either the close of plaintiff's evidence or of all the evidence.

[1, 2] Why, then, should not a presumption of negligence have been indulged against defendant, casting upon it the burden of showing that it was not in fault? We have seen that defendant filed two pleas, one of not guilty, and the other of justification. It is true that, where the law authorizes a defendant to set up several pleas, he may use each plea in his defense, and the admissions unavoidably contained in one cannot be used against him in another. Glenn v. Sumner, 132 U. S. 152, 157, 10 Sup. Ct. 41, 33 L. Ed. 301. But this is so only where the defenses so made are inconsistent. Smith v. Gale, 144 U. S. 509, 524, 12 Sup. Ct. 674, 36 L. Ed. 521. In the instant case the defenses are not inconsistent; the denial of the first plea is explained and necessarily qualified by the second; in the latter the defendant adopted the act of its servant as its own and as one of self-defense; and if that had been shown to be true it would have relieved the defendant and its servant alike of liability. N. O. & N. E. Railroad Co. v. Jopes, 142 U. S. 18, 25, 27, 12 Sup. Ct. 109, 35 L. Ed. 919. Now, under the pleadings and the concurring testimony produced by the parties, the case stood thus: Passenger and carrier, and injury to the former inflicted with a knife by a servant of the latter in the gangway of the freight deck, at a time when this servant and others of his class were on that deck under special call to the performance of duty, with an issue only as to blame for the injury; and it is constantly to be remembered that upon this issue the defendant was seeking through a plea of self-defense to excuse its failure to perform the high degree of care and duty it was under to protect plaintiff throughout his journey against misconduct and assault on the part of its servants. Steamboat Co. v. Brockett, 121 U. S. 637, 646, 647, 648, 7 Sup. Ct. 1039, 30 L. Ed. 1049; Pendleton v. Kinsley, 3 Cliff. 416, 421, 426, 427, Fed. Cas. No. 10,922, per Justice Clifford, sitting as Circuit Justice; Alabama City, G. & A. Ry. Co. v. Sampley, 169 Ala. 372, 377, 53 South. 142.

If the plaintiff had been injured through some defect in the machinery, appliances, or the like, used by defendant in navigating the boat, or in the boat itself, or through collision of this boat with another navigated by defendant, there would be no doubt that evidence similar in its relation to such objects or collision to that of the evidence concerning the issues presented here would have given rise to a presumption of negligence in defendant, and have exacted of it an explanation sufficient in law to acquit it of blame, for the rule is true as well with respect to carriers of passengers upon water as upon

land; and this is shown, not only explicitly by decisions, but also in a striking way by the common use that is made in the decisions of all classes of passenger cases, regardless of the particular means of transportation employed by the carrier in question. Dunlap v. Steamboat Reliance (C. C.) 2 Fed. 249, 251, 252-4; Miller v. Ocean S. S. Co., 118 N. Y. 199, 206, 23 N. E. 462; Rose v. Stephens & Condit Transp. Co. (C. C.) 11 Fed. 438, 439; Caldwell v. New Jersey Steamship Co., 47 N. Y. 282, 291; Le Barron v. East Boston Ferry Co., 93 Mass. (11 Allen) 312, 317, 87 Am. Dec. 717; Eagle Packet Co. v. Defries, 94 Ill. 598, 602, 34 Am. Rep. 245. The rule of presumptive negligence was applied in the court below and, in view of the evidence, was apparently approved respecting injuries to a stevedore, in The William Branfoot, 52 Fed. 390, 394, 395, 3 C. C. A. 155 (C. C. A. 4th Cir.), per Chief Justice Fuller sitting in circuit; rule of prima facie negligence approved in respect of an "owner and wharfinger of a wharf," in Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 554, 555, 11 Sup. Ct. 653, 35 L. Ed. 270; and the last two decisions, with others, were applied by this court, in Cincinnati, etc., Ry. Co. v. South Fork Coal Co., 139 Fed. 528, 536, 71 C. C. A. 316, 1 L. R. A. (N. S.) 533, in sustaining a judgment for loss of lumber from fire superinduced by collision of freight trains, resulting in telescoping certain oil cars and igniting the oil by sparks of unusual size emitted from one of the locomotives—the late Justice Lurton saying (139 Fed. 537, 71 C. C. A. 325, 1 L. R. A. [N. S.] 533):

"But where the character of the accident is such as to strongly point to a cause which is abnormal and negligent, it devolves upon the defendant to explain that that abnormal cause was not due to want of due care."

And generally as to the conditions which will give rise to a presumption of negligence concerning injuries to passengers while being conveyed by railroad carriers and the like, see Gleeson v. Virginia Midland Rd. Co., 140 U. S. 435, 443, 11 Sup. Ct. 859, 862 (35 L. Ed. 458) where, as respects a landslide in a railroad cut and consequent injuries, it was said:

"Since the decisions in Stokes v. Saltonstall, 13 Pet. 181 [10 L. Ed. 115], and Railroad Company v. Pollard, 22 Wall. 341 [22 L. Ed. 877], it has been settled law in this court that the happening of an injurious accident is in passenger cases prima facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight. The rule announced in those cases has received general acceptance, and was followed at the present term in Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551 [11 Sup. Ct. 653, 35 L. Ed. 270]."

Judge Gray's analysis of the last case and others of the Supreme Court, in Irvine v. Delaware, L. & W. R. Co., 184 Fed. 664, 668, 669, 670, 106 C. C. A. 600 (C. C. A. 3d Cir.) is deserving of distinct consideration. See also Kirkendall v. Union Pac. R. Co., 200 Fed. 197, 206, 118 C. C. A. 383, and citations (C. C. A. 8th Cir.); Southern Pac. Co. v. Cavin, 144 Fed. 348, 351, 75 C. C. A. 350 (C. C. A. 9th Cir.); Griffen v. Manice, 166 N. Y. 188, 193, 196, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630 (an elevator case); O'Callaghan v. Dellwood

Park Co., 242 Ill. 336, 345, 89 N. E. 1005, 26 L. R. A. (N. S.) 1054, 134 Am. St. Rep. 331, 17 Ann. Cas. 407 (a scenic railway case); Madara v. Railway Co., 192 Pa. 542, 547, 43 Atl. 995, in connection with Levin v. P. & R. R. Co., 228 Pa. 266, 267, 77 Atl. 456; Green v. Pac. Lumber Co., 130 Cal. 435, 440, 62 Pac. 747 (a railroad operated by the lumber company); Benedick v. Potts, 88 Md. 52, 56, 40 Atl. 1067, 41 L. R. A. 478 (an inclined plane railway case); Brown v. Union Pac. R. Co., 29 L. R. A. (N. S.) 808 (81 Kan. 701, 106 Pac. 1001), and the extended note, with citations, showing a variety of conditions under which the presumption in question will and will not arise.

The theory of the best considered of this class of decisions is that evidence merely of the relation of passenger and his injury is not enough to put the defendant to its proofs; the plaintiff's evidence must in addition so far disclose the attendant circumstances of the injury as to enable a jury fairly to determine whether the passenger is without fault and the carrier is guilty of neglect of the applicable rule of care. Such circumstances will appear, for example, where the accident is clearly outside of the usual course of the particular business when it is conducted in a prudent manner, and the cause and the means of explaining it are apparently within the exclusive control of the carrier. These conditions are naturally suggestive of the rule res ipsa loquitur, and of the variety of circumstances under which it is applied as a rule of evidence; and, while the rule is not applicable here, yet, as Judge Cullen said, in Griffen v. Manice, supra, at page 193 of 166 N. Y., at page 926 of 59 N. E. (52 L. R. A. 922, 82 Am. St. Rep. 630):

"The 'res' * * * includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue, the defendant's negligence. The maxim is also in part based on the consideration that where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present. Neither of these rules * * * is confined to any particular class of cases, but they are general rules of evidence applicable wherever issues of fact are to be determined either in civil or criminal actions."

It must therefore be conceded that when it comes to applying the rule of presumption of negligence against a carrier for an injury inflicted directly by its servant, and not through a defect in an inanimate thing under the carrier's control, the circumstances attending the injury are essential to a right inference as to the proximate fault. But, considering the obvious fact that the disembowelment of a passenger with a knife in the hands of a servant of the carrier does not ordinarily occur on a steamboat that is under control of her officers and carefully managed by them, in connection with the other facts practically admitted, it is not perceivable why the attendant circumstances were not sufficiently shown to require defendant to explain its servant's conduct; in short, we think enough was disclosed to give rise to a presumption of negligence against defendant, and so to place upon it the burden of proving its plea of justification. Birmingham Railway, Light & Power Co. v. Coleman (Ala., Sup. April 24, 1913)

61 South. 890, 891, 892; Kohner v. Capitol Traction Co., 22 App. D. C. 181, 187, 190, 62 L. R. A. 875.

[3] In the second assignment of error defendant complains of the following portion of the charge:

"Had it [defendant] exercised that degree of care and caution which I have just described for the safety and welfare of its passenger[s] while he was aboard its boat, in the preparations it made for the safety, comfort, and convenience of its passengers in what is called the 'monkey deck'? Did it exercise that reasonable degree of care and caution which it owed to this passenger in permitting him and others, as the proof shows, to overflow the monkey deck, if they did overflow it, and get down on the freight deck among the roustabouts? Or, if it had exercised that degree of care and caution which is required of a common carrier, would the passengers whom it was hauling for hire be thrown in contact and commingled with the roustabouts? * * * If, however, you find from the greater weight of the evidence that they confined that trouble in the monkey deck to words, and went downstairs, and then the plaintiff assaulted the servant, who cut him in the bowels with a deadly weapon, and he, in necessary defense of himself, used his knife and disemboweled him, why he could not recover, unless you further find that the company was negligent and had failed to do its duty to this plaintiff in providing him with reasonably safe accommodations and conveniences on the boat while he was a passenger. In other words, does the company exercise that degree of care and caution required of it, which I have just stated, when it provides for its passengers no sufficient place, if it should not be sufficient, other than the intermingling and commingling on the lower deck, or freight deck, of the boat, with the roustabouts?"

The complaint made at the time of the charge was that the crowded condition of the monkey deck was treated as a ground of recovery, and that this was too remote to be considered as a cause of the injury, and, besides, that no such cause of action was alleged in the declaration. Exceptions were reserved accordingly. The court thereupon modified the charge as follows:

"I do not mean to be understood as saying, if they did not have sufficient room in the monkey deck, that, of itself, would warrant you in finding for the plaintiff. I meant to be understood as saying it was the duty of the company to exercise the degree of care which I have described in furnishing suitable conveniences for passengers, and if by failure to have sufficient conveniences for them they were compelled to go down on the lower deck with freight, then you could consider that question, in determining whether it had discharged its duty to this passenger, if he had, under these circumstances, to go to the deck below."

The exception then reserved was that the crowded condition of the monkey deck was not the proximate cause of the injury. We do not regard the portion of the charge before quoted, nor the modification so made, as having been given upon the theory that the overcrowded condition of the monkey deck was to be treated as an independent cause of action. True, testimony was received upon this subject, but without objection on the part of defendant. The testimony was admissible in support of the theory of plaintiff that the overcrowded condition of the deck had caused him to go to the gangway of the freight deck, and not that he had followed Tillman to that point for the purpose of assaulting him. Furthermore, the complaints against this portion of the charge, and the modification, do not seem to have been made with reference to a particular clause that has given us some

concern. It is the part set out in the assignment, which, upon first impression, would appear to qualify the right of self-defense by failure in defendant to provide against overcrowding the monkey deck; that is, to provide against the necessity to associate passengers with roustabouts. Study of the whole charge, however, convinces us that it was not intended so to qualify the right in defendant's servant reasonably to defend himself against aggressions, if there were any, of plaintiff. In the first place, counsel did not call the attention of the court below to the matter, and naturally no assignment upon the subject appears; indeed, counsel for the first time allude to it here. In the next place, such an interpretation of the portion of the charge set out in the assignment is untenable, when considered in connection with the part omitted from the place above indicated by asterisks:

"If, however, upon the other hand, you believe from the greater weight of the evidence that the plaintiff was there on board this boat and assaulted this servant with a deadly weapon, and the servant, in defense of himself, used such force as was necessary to protect himself against death or great bodily harm, and in doing that disemboweled this man, then there would be no liability. If, however, you believe from the proof in this case that this servant who cut the plaintiff and the plaintiff were engaged in a game of craps in the monkey deck, and they had some words there on that subject, and they started and went on downstairs, on the lower deck, and this man, the servant, assaulted plaintiff down there, as he says he did, and cut his bowels out, then the company is liable."

Plainly these alternative hypotheses of liability and nonliability of defendant were fairly in accord with the theories of claim and defense as they were respectively presented by the parties at the trial; and, since neither court nor counsel seem at the time to have been conscious of any qualification of the right of self-defense, it is hardly conceivable that the jury could have been misled, or that any material prejudice could have ensued. Indeed, the alternative of the charge excusing defendant, as stated, was in effect as favorable to defendant as was the corresponding portion of its first request, which appears in the sixth assignment.

The fifth assignment of error concerns a written statement purporting to have been signed by one Tom Johnson. Johnson was unable to write his name, and could have signed the paper only by his mark. When he was called to the witness stand a controversy arose as to whether he had signed the paper. The dispute was of such a nature that the court directed the jury to retire, and then heard testimony touching the execution of the paper. When this testimony was closed, the judge recalled the jury, and examination of the witness was resumed. However, while the testimony was being taken before the judge alone, counsel for plaintiff expressed a desire that it be submitted to the jury; but the court refused, and when counsel for plaintiff wished to make a statement in regard to the disputed signature, counsel for defendant said:

"Your honor is not going into this in this trial before the jury?"

After the jury had been recalled, the trial judge stated that he was satisfied to admit the paper as one "which the negro has put his name to by mark." Whereupon counsel for defendant said:

"I want to get it in the record that I am excepting to your honor's deciding this question of fact, and I want to get it clearly in the jury's mind that your honor is not passing upon what he said."

The court then stated:

"I am not expressing an opinion as to whether what the negro said on the stand is the truth, or that this paper is the truth. That is for you, the jury."

And no further exception was reserved. Plainly defendant is in no position to complain of what was done; and, moreover, we are unable to see how the defendant was prejudiced by the court's action.

Examination of the remaining assignments satisfies us that they should be overruled.

The judgment below is affirmed, with costs.