**NEW YORK CENT. R. CO. v. JOHNSON**
(two cases).

Circuit Court of Appeals, Eighth Circuit.
July 2, 1928.

Nos. 8020, 8021.

1. **Witnesses ⬤═37(1)—Railroad passenger, injured by alleged sudden jerking of train, and her companion, held competent to testify as to what occurred and results thereof.**

In passenger's action against railroad for injuries alleged to have been sustained by sudden and unusual jerking of train, plaintiff and her traveling companion, who qualified by stating they had wide experience in traveling on railroad trains, were competent to state in their own way just what occurred and the results thereof.

2. **Carriers ⬤═320(15)—Usual movements of train do not constitute negligence, and risks thereof are assumed by passenger.**

The usual movements of a train, including necessary starting, stopping, high rate of speed, and the inevitable rocking and swaying, do not constitute negligence, and risks thereof are assumed by passenger.

3. **Carriers ⬤═316(1)—Under res ipsa loquitur doctrine, injury to passenger not himself negligent is presumed to result from unusual occurrence, and carrier must show contrary, not necessarily by preponderance of evidence.**

Train being under sole control of carrier, presumption arises, under doctrine of res ipsa loquitur, that an injury to passenger without his negligence has been caused by an unusual occurrence, and would not have happened, had carrier used that high degree of care in operating train which the law imposes on him, and burden is on carrier to explain or meet the prima facie case thereby made out, not necessarily by preponderance of evidence, because burden of proving negligence is at all times on passenger.

4. **Evidence ⬤═553(2)—Medical experts were properly asked hypothetical questions, based on sufficient facts in record to permit giving intelligent opinion.**

Medical experts, who qualified professionally, were properly asked, in personal injury case, what their judgment would be on all or any part of facts that had some support in record, provided sufficient facts were assumed to enable them to give an intelligent opinion.

5. **Evidence ⬤═553(1)—Form of hypothetical questions asked expert witness is largely within trial court's sound discretion, and may reflect theory of propounding party.**

Form of hypothetical questions asked medical witnesses in personal injury case rests largely in sound discretion of trial court, and may be so framed as to reflect theory of the party propounding them.

6. **Evidence ⬤═553(2)—Hypothetical question is not rendered improper because certain additional facts might be stated, which would enable giving more satisfactory answer.**

Hypothetical question asked expert witness, otherwise proper, is not rendered improper for the reason that certain additional facts might have been put in which would assist witness in giving a more satisfactory answer.

7. **Evidence ⬤═506—Asking hypothetical questions of expert medical witnesses held not to invade province of jury.**

Asking hypothetical questions of expert medical witnesses in personal injury case held not to invade province of jury to decide ultimate issues.

8. **Trial ⬤═120(2)—Argument of plaintiff's counsel in personal injury case that defense was that plaintiff had syphilis held improper, where only support therefor was in cross-examination of plaintiff's witnesses.**

In passenger's action for injury alleged to have been sustained by sudden jerking of train, statement of plaintiff's counsel in addressing jury that vilest defense in case was that plaintiff had syphilis, and his enlargement thereon over defendant's objections, held improper, where defense put no witnesses on stand to controvert plaintiff's evidence that she did not have syphilis, and only evidence justifying plaintiff's argument was cross-examination of some of plaintiff's witnesses.

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

Separate actions by Edward H. Johnson and by Myrtle J. Johnson against the New York Central Railroad Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

A. S. Marley, of Kansas City, Mo. (W. Haley Reed, of Kansas City, Mo., and Sidney C. Murray and M. A. Jersild, both of Chicago, Ill., on the brief), for plaintiff in error.

Price Wickersham, of Kansas City, Mo. (John H. Atwood, Oscar S. Hill, and C. C. Chilcott, all of Kansas City, Mo., on the brief), for defendants in error.

Before KENYON, Circuit Judge, and SYMES and MARTINEAU, District Judges.

SYMES, District Judge. These two cases are here by separate writs of error, sued out by the railroad company from separate judgments entered in the District Court of the United States for the Western District of Missouri, in favor of the respective plaintiffs below, defendants in error here. The two actions were consolidated, tried as one, and the errors complained of are the same in both.

No. 8020 was brought by Edward H. Johnson to recover damages as the husband of Myrtle J. Johnson, for injuries alleged to have been sustained by her, while riding on one of defendant's trains as a passenger, by reason of alleged negligence of the railroad company.

In No. 8021, Myrtle J. Johnson, plaintiff below, seeks to recover damages alleged to have been suffered by her by reason of the same alleged negligence of the railroad company.

Myrtle J. Johnson, in company with her sister-in-law, Imogene Johnson, was riding on a so-called "extra fare, solid Pullman train" of the defendant company, en route from Harmon, N. Y., to Chicago, Ill. The ladies spent the evening in the club car, and between 11 and 12 p. m., repaired to their berth, lower 8, car 64, located on the right-hand side of the train as it traveled west. Imogene Johnson seated herself on the edge of the berth with a suitcase open before her, taking out their night clothes, when, according to the evidence of the two ladies, the speed of the train was suddenly checked, and then accelerated. At the same time, Myrtle J. Johnson was standing in the aisle near the foot of the berth, holding in her right hand several folds of the curtains in order to steady herself, facing and talking to Imogene. The two women describe what happened as a terrible jerk, as though the train was going to stop, but did not; then a yank, and that the train lurched as it went on again. Imogene Johnson fell across the berth and towards the foot, while Myrtle was thrown three or four feet into the aisle of the sleeper towards the opposite berth. Myrtle testified:

"I was standing there holding on to the curtain with my right hand; had it just below the upper berth, just holding it below the upper berth, and securing it on the board that separates the two berths and my left hand on my hip. The train gave an awful jerk and jolt and a terrible lurch. And I had my hand hold of the curtain just below the lower part of the upper berth, and held it up against the board that separates the two berths from one another, and my left hand on my hip, and this train gave a sudden violent lunge as though it stopped, and threw my whole body around and threw my head up against the edges of the upper berth with such force it knocked my head down on my shoulders, and then it threw me with such force that it finally threw me to the floor."

Imogene said: "This was the most extraordinary jerk, lurch, lunge, and jolt that I have ever experienced. The sudden lurch * * * swung her [Myrtle] around. She was trying to hang on to the curtain." Imogene scrambled to her feet, and according to her testimony heard Myrtle moaning, and found her "rocking back and forth in the aisle, saying 'Oh, my head! Oh, my head!'" etc. She assisted Myrtle up and into the berth, rubbed her head, talked to her, helped her to undress and get to bed. There were no other eyewitnesses to these happenings.

The two ladies occupied the same berth and slept till nearly noon the next morning. Imogene says that upon awakening she found Myrtle paralyzed on her entire right side. Her face was drawn, as if something had pulled it to one side, and she was uttering inarticulate sobs, crying, etc. A doctor was not obtainable until the arrival of the train at Chicago. Myrtle Johnson was carried out of the Pullman, put in a wheel chair, taken to another station, and with her companion boarded the Santa Fé train to Kansas City. Upon her arrival there she was taken to Grace Hospital. According to Imogene Johnson, "up to this time Myrtle was unable to talk, one-half of her tongue being paralyzed." The case was diagnosed as œdema of the brain, resulting from injury, causing a partial paralysis of the right side.

The members of the train crew—i. e., the conductor, porter, maid, and brakeman—testifying for the railroad company, said they did not recall any unusual jar or sudden jerk at the time in question. It is sufficient to say that there was a square conflict of evidence as to the actual happenings. The evidence of these employees, who were not eyewitnesses, was necessarily of a negative character, nor was the matter called to their attention until some time later. Separate verdicts were rendered in favor of Myrtle Johnson and Edward Johnson.

Thirty alleged errors in the conduct of the trial are set out in the specifications. Those requiring attention may be classified under three heads: (1) Refusal of the court to direct a peremptory verdict in favor of the defendant at the close of the plaintiff's case, and at the close of all the evidence. (2) The admission of incompetent evidence offered by the plaintiff. (3) Improper argument to the jury by counsel for the plaintiff. The specifications of error are practically identical in both cases.

1. The sole question here is: Had the plaintiff established a prima facie case, and, if so, was this situation changed at the conclusion of all the evidence? The plaintiff and her sister-in-law gave a most graphic description of the accident. That the plaintiff was thrown, and suffered injuries of a more or less grievous and permanent nature, is not disputed. So we inquire: Did the accident result from some unusual or extraordinary happening; such as a sudden stopping, starting, or jerking of the train, beyond what might ordinarily be expected by passenger

under all the surrounding circumstances, which include the usual and necessary starting, stopping, high rate of speed, inevitable rocking, swaying, etc., of the modern passenger train?

[1, 2] The plaintiff and her co-witness qualified by stating they had had wide experience in traveling on railroad trains of a similar nature and kind. We see no reason why they were not competent to state in their own way just what occurred, and the results thereof. That a passenger on public conveyances is qualified to state his experiences, observations, and the phenomena ordinarily incident to a railroad journey, such as testified to by these two ladies, has long been settled. The usual movements of a train, referred to above, do not constitute negligence, and the risks thereof are assumed by the passenger. The plaintiff's evidence is that this particular accident resulted from a slackening and jerk, or swaying, of a most extraordinary and unusual character.

[3] Counsel discuss the doctrine of res ipsa loquitur—"the thing itself speaks." The federal courts have decided that it applies to cases of this character; that is, the train being under the sole control of the carrier, if a passenger is injured without negligence on his part, a presumption based on past experience arises that the occurrence was an unusual one, and would not have happened had the carrier used that high degree of care in operating the train that the law imposes upon it. It therefore follows in the instant case that, the plaintiff having made a prima facie case, a legal presumption arises under the doctrine above mentioned in favor of the plaintiff, which it became incumbent upon the defendant to explain or meet, but not necessarily by a preponderance of the evidence, because the burden of proving negligence is at all times upon the plaintiff. San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 32 S. Ct. 399, 156 L. Ed. 680; Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905; William B. Stokes v. Francis Saltonstall, 13 Pet. 181, 10 L. Ed. 115; Cincinnati, N. O. & T. P. Ry. Co. v. South Fork Coal Co. (C. C. A.) 139 F. 528, 1 L. R. A. (N. S.) 533; Railroad Co. v. Pollard, 22 Wall. 341, 22 L. Ed. 877; Transportation Co. v. Downer, 11 Wall. 129, 20 L. Ed. 160; Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Hadley, 170 Ind. 204, 82 N. E. 1025, 16 L. R. A. (N. S.) 527, 16 Ann. Cas. 1. This it attempted to do, and thus made an issue of fact for the jury under proper instructions.

The court told the jury that the railroad company was not an insurer of the safety of its passengers, that the latter are not entitled to recover damages merely by showing they were injured, that the carrier was only liable for negligence in exercising that high degree of care that the law imposes upon it, and that there could be no recovery unless the jury found by a preponderance of the testimony that the injury was caused by an extraordinary and unusual lurching, etc., of the train, and not then, unless the same was caused by the defendant's negligence, and that the burden was upon the plaintiff to prove his case. The correctness of all this was not, for reasons we have stated, affected by the further instruction that, if the injury was directly caused by an extraordinary lurching and jerking, the plaintiff need not go further and prove what negligence, if any, caused that lurching, the law presuming that an extraordinary occurrence of this kind was due to the fault of the carrier, but that this presumption was rebuttable, and not conclusive. Mendelson v. Davis (C. C. A.) 281 F. 18; Lee Line Steamers v. Robinson (C. C. A.) 218 F. 559, L. R. A. 1916C, 358. The railroad company did not charge contributory negligence.

[4-7] 2. The several specifications under this heading are based upon objections made to hypothetical questions submitted to medical experts. These witnesses qualified professionally, and it was therefore proper to ask them what their judgment would be upon all, or any part, of the facts that have some support in the record, provided a sufficient number of facts are assumed to enable the witness to give an intelligent opinion. The form of questions of this character rests largely in the sound discretion of the trial court, and may be so framed as to reflect the theory of the party propounding them. A question otherwise proper is not rendered improper for the reason that certain additional facts might have been put in which would assist such witness in giving a more satisfactory answer. The jury, no doubt, understood that these questions were hypothetical, that is, based on assumed facts, so there was no invasion of the peculiar province of the jury to decide the ultimate issues. A qualified physician or surgeon may state the results of specific occurrences on the body. Wheeler v. Chicago & W. I. R. Co. et al., 267 Ill. 306, 108 N. E. 330. And the extent and character of the disability resulting therefrom, and whether certain conduct is consistent with having sustained particular injuries. Scott v. The Homesteaders, 149 Iowa, 541, 129 N. W. 310.

Likewise it has been held that an osteopath is competent to express an opinion on the injury or disease, and the treatment thereof. Barnes v. Danville Street Ry., 235 Ill. 566, 85 N. E. 921, 126 Am. St. Rep. 237; 22 C. J. 677; 22 C. J. 543; Macon Ry. & Light Co. v. Mason, 123 Ga. 773, 51 S. E. 569.

[8] 3. Both counsel for the plaintiff who addressed the jury stated that the defense charged that "the vilest defense made in this case, a defense which would bar that girl from all society, intimated in this case that she had the syphilis. That is the defense in this case, that she had the syphilis." And then they proceeded to dilate on and exploit this text. We find no justification for this assumption, or for the verbal pyrotechnics that counsel were permitted to indulge in over the objections of the attorneys for the defendant. The defense put no witnesses on the stand to controvert the plaintiff's evidence that the plaintiff did not have syphilis. The only evidence counsel for the plaintiff cites as justifying their argument was the cross-examination of some of plaintiff's witnesses; but an affirmative defense of this character cannot ordinarily be proved by cross-examination. Moreover, defendant's interrogatories along this line were no more than a continuation of similar questions propounded on the direct examination. We therefore deem it proper to observe that this line of argument was likely to create prejudice, and did not aid the court or jury in the performance of their duties.

The record containing no reversible errors, the judgment in each of the two cases is affirmed.